[No. S162029. May 13, 2010.]

JUDY BOEKEN, Plaintiff and Appellant, v.
PHILIP MORRIS USA, INC., Defendant and Respondent.

COUNSEL

Law Offices of Michael J. Piuze, Michael J. Piuze; and Kenneth Chesebro for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Adam M. Flake, John F. Querio; Shook, Hardy & Bacon, Lucy E. Mason and Patrick J. Gregory for Defendant and Respondent.

OPINION

**KENNARD, J.**—After plaintiff's husband, a cigarette smoker, was diagnosed with lung cancer, plaintiff filed a common law action for loss of consortium

against defendant cigarette manufacturer, seeking compensation for the "permanent[]" loss of her husband's companionship and affection. That action was dismissed with prejudice. Then, after her husband's death from the lung cancer, plaintiff brought the current wrongful death action against defendant, again seeking compensation for the loss of her husband's companionship and affection.

■ The doctrine of res judicata prohibits a second suit between the same parties on the same cause of action. In this context, the term "cause of action" is defined in terms of a primary right and a breach of the corresponding duty; the primary right and the breach together constitute the cause of action. We conclude that plaintiff's wrongful death action involves the same primary right and breach as her former loss of consortium action, and that therefore the doctrine of res judicata bars plaintiff's wrongful death action. We affirm the judgment of the Court of Appeal.

## I

Judy Boeken, plaintiff in the wrongful death action before us, is the widow of Richard Boeken.

Richard began smoking cigarettes in 1957 and was diagnosed with lung cancer in 1999. In March 2000, Richard sued cigarette manufacturer Philip Morris USA, Inc., asserting that it had wrongfully caused his cancer. A jury awarded Richard $5,539,127 in compensatory damages and $3 billion in punitive damages. After Philip Morris filed a motion for a new trial, the trial court reduced the punitive damages to $100 million. Both parties appealed. In January 2002, while that appeal was pending, Richard died from his cancer. The Court of Appeal ultimately reduced the punitive damages award to $50 million, but it otherwise affirmed the trial court's judgment. (See *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1650, 1704 [26 Cal.Rptr.3d 638].) In satisfaction of this judgment (with interest), plaintiff received over $80 million in March 2006.

In October 2000, while her husband was still alive, plaintiff filed a separate common law action against Philip Morris for loss of consortium, seeking compensation for the loss of her husband's companionship and affection. Plaintiff alleged that defendant's wrongful conduct had caused her husband's lung cancer and that as a result of the cancer he was "unable to perform the necessary duties as a spouse" and would "not be able to perform such work, services, and duties in the future." Plaintiff further asserted that she had been "permanently deprived" of her husband's consortium. Specifically, plaintiff

alleged that she suffered "the loss of love, affection, society, companionship, sexual relations, and support."[1]

About four months after filing that action, plaintiff dismissed it with prejudice. The record before us does not indicate the reason for the dismissal; for purposes of applying the doctrine of res judicata, however, a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action. (See *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1332 [35 Cal.Rptr.3d 496]; *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820–821 [265 Cal.Rptr. 217]; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1086–1087 [255 Cal.Rptr. 469]; *Palmquist v. Palmquist* (1963) 212 Cal.App.2d 340, 343–344 [27 Cal.Rptr. 756].) As the court explained in *Roybal, supra,* 207 Cal.App.3d at pages 1086–1087: "The statutory term 'with prejudice' clearly means the plaintiff's right of action is terminated and may not be revived. . . . [A] dismissal with prejudice . . . bars any future action on the same subject matter."

A year after dismissal of plaintiff's common law action for loss of consortium, her husband died from the effects of lung cancer. Plaintiff then filed the present wrongful death action under Code of Civil Procedure section 377.60, again seeking compensation from Philip Morris for the loss of her husband's companionship and affection. This time, plaintiff alleged that she had suffered "loss of love, companionship, comfort, affection, society, solace, and moral support."[2] Philip Morris demurred, arguing that plaintiff's action for wrongful death was barred by the doctrine of res judicata because plaintiff's previous loss of consortium action against Philip Morris had involved the same primary right. The trial court sustained the demurrer without leave to amend, and plaintiff appealed. A divided panel of the Court of Appeal affirmed.

The Court of Appeal's analysis focused on the relief that plaintiff sought in both actions. The court reasoned that the damages available to plaintiff in her common law action for loss of consortium (filed and dismissed with prejudice

---

[1] This court has defined the phrase "loss of consortium" as referring to "the noneconomic aspects of the marriage relation, including conjugal society, comfort, affection, and companionship." (*Deshotel v. Atchison, T. & S. F. Ry. Co.* (1958) 50 Cal.2d 664, 665 [328 P.2d 449].)

[2] Plaintiff's wrongful death complaint also sought damages from Philip Morris for unspecified funeral and burial expenses. In sustaining Philip Morris's demurrer, the trial court did not explain its reasons for dismissing this aspect of plaintiff's claim, but plaintiff did not raise this issue on appeal and therefore has forfeited it. The same wrongful death complaint also included causes of action brought by *other plaintiffs* and causes of action against *other defendants*, but the status of those causes of action is not before us. The only question before us is the viability of plaintiff's wrongful death claim against Philip Morris for noneconomic damages resulting from loss of consortium.

while her husband was still alive) included *future* loss of consortium based on the life expectancy her husband had *before* his smoking injury. In other words, the Court of Appeal concluded that plaintiff's previous loss of consortium action against defendant covered claims for lost companionship and affection between the time of her husband's actual death from lung cancer and the time when he would have died of natural causes if defendant's cigarettes had not wrongfully injured him. The court noted that this postdeath period is the same period covered in plaintiff's present wrongful death action, in which she seeks the same type of damages for the same type of injury as in the previous action. Accordingly, the Court of Appeal held that the dismissal with prejudice of plaintiff's previous loss of consortium action constituted a res judicata bar, precluding plaintiff from relitigating the same injury—loss of consortium—a second time in her current wrongful death action.[3]

We granted plaintiff's petition for review.

## II

### A

At common law, a cause of action arising out of a personal tort terminated upon the death of either the injured party or the tortfeasor. (See, e.g., *Munchiando v. Bach* (1928) 203 Cal. 457, 458 [264 P. 762] [death of plaintiff]; *Harker v. Clark* (1881) 57 Cal. 245, 246 [death of defendant].)

In addition, at common law the family members of a person who had been wrongfully killed by a third party had no cause of action against the third party for loss of support or other damages: "That a civil action for the death of a person, *per se*, cannot be maintained by any one at common law is too well settled to admit of discussion at the present time. This rule is so well and firmly established that an investigation of its reason and philosophy would be idle and useless. . . . [¶] In *Baker* v. *Bolton* [(1808) 1 Camp. 493] . . . , Lord Ellenborough used these words: 'In a civil Court the death of a human being cannot be complained of as an injury.' " (*Kramer v. Market St. R. R. Co.* (1864) 25 Cal. 434, 435.)

Finally, at common law (and also in Cal. before 1974) the spouse of a person who had been wrongfully injured (but not killed) by a third party had no cause of action against the third party for loss of companionship, affection, or other noneconomic losses. (See *West v. City of San Diego* (1960) 54 Cal.2d 469 [6 Cal.Rptr. 289, 353 P.2d 929] [husband suing for loss of wife's

---

[3] The dissenting opinion in the Court of Appeal is discussed on pages 803–804, *post*.

consortium after wife was injured]; *Deshotel v. Atchison, T. & S. F. Ry. Co.,* *supra*, 50 Cal.2d 664 [wife suing for loss of husband's consortium after husband was injured].)

In 1851, as part of a general enactment governing civil proceedings, the California Legislature set aside the common law rule precluding the survival of causes of action after the death of a party. Section 16 of the act provided in relevant part: "An action shall not abate by the death, or other disability of a party . . . . In case of the death, or other disability of a party, the Court, on motion, may allow the action to be continued by or against his representative or successor in interest." (Stats. 1851, ch. 5, § 16, pp. 52–53.)

In 1862, the Legislature also set aside the common law rule barring recovery for the wrongful death of a spouse or close relative. The act provided in relevant part: "Whenever the death of a person shall be caused by wrongful act, neglect, or default . . . , then . . . the person who . . . would have been liable if death had not ensued, shall be liable to an action for damages . . ." benefiting the deceased's widow and next of kin. (Stats. 1862, ch. 330, § 1, p. 447.) "[I]n every such action, the jury . . . may take into consideration *the pecuniary injury resulting from such death to the wife and next of kin of such deceased person* . . . ." (*Id.*, § 3, p. 448, italics added.)

California law continues to recognize those two statutory causes of action, in provisions that are now codified in Code of Civil Procedure sections 377.20 (the survival statute)[4] and 377.60 (the wrongful death statute).[5] Originally, the recovery in wrongful death actions was limited to "pecuniary injury"

---

[4] Code of Civil Procedure section 377.20 now provides: "(a) Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period.

"(b) This section applies even though a loss or damage occurs simultaneously with or after the death of a person who would have been liable if the person's death had not preceded or occurred simultaneously with the loss or damage."

[5] Code of Civil Procedure section 377.60 now provides in relevant part: "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

"(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

"(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

"(c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support."

(Stats. 1862, ch. 330, § 3, p. 448), which some courts interpreted to mean that only economic losses were compensable (such as loss of financial support or household services). As early as 1911, however, we recognized the right of wrongful death plaintiffs to recover *noneconomic* damages, including damages for loss of society and comfort, so long as the damages were not based merely on grief or sorrow. (See *Bond v. United Railroads of San Francisco* (1911) 159 Cal. 270, 285–286 [113 P. 366].) In *Krouse v. Graham* (1977) 19 Cal.3d 59, 67–70 [137 Cal.Rptr. 863, 562 P.2d 1022], we confirmed that loss of consortium damages are recoverable in wrongful death actions.

Thus, California's wrongful death statute has long permitted a person whose spouse was wrongfully *killed* to sue for loss of consortium damages, but a person whose spouse was *injured*, but not killed, had no right of action for the same damages, because no statute had supplanted the common law rule barring recovery for the wrongful *injury* of a spouse. (See *West v. City of San Diego, supra,* 54 Cal.2d 469; *Deshotel v. Atchison, T. & S. F. Ry. Co., supra,* 50 Cal.2d 664.) This disparity remained even when the spouse's injuries were severely disabling and permanent, and the loss of consortium just as great as it would have been if the spouse had died. The inequity of this rule led this court to abrogate it in *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669] (*Rodriguez*). In that case, we recognized a new common law cause of action for loss of consortium resulting from the wrongful injury of a spouse, overruling our earlier decisions in *West v. City of San Diego, supra,* 54 Cal.2d 469, and *Deshotel v. Atchison, T. & S. F. Ry. Co., supra,* 50 Cal.2d 664.

■ But the common law cause of action we recognized in *Rodriguez, supra,* 12 Cal.3d 382, was limited to cases involving wrongfully *injured* spouses; the rule remained that a cause of action for wrongful *death* (and the right to recover loss of consortium damages as part of that action) was purely a creature of statute. (See *Justus v. Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122] (*Justus*).) This distinction is significant because a common law action for loss of consortium is a civil action sounding in tort, and therefore punitive damages are available. (See Civ. Code, § 3294; see also *Buell-Wilson v. Ford Motor Co.* (2006) 141 Cal.App.4th 525 [46 Cal.Rptr.3d 147], judg. vacated on other grounds and cause remanded *sub nom. Ford Motor Co. v. Buell-Wilson* (2007) 550 U.S. 931 [167 L.Ed.2d 1087, 127 S.Ct. 2250].) Punitive damages are not available, however, in a statutory wrongful death action. (See *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 450 [131 Cal.Rptr. 14, 551 P.2d 334]; *Pease v. Beech Aircraft Corp.* (1974) 38 Cal.App.3d 450, 460–462 [113 Cal.Rptr. 416].)

*Rodriguez, supra,* 12 Cal.3d 382, involved a spouse who had *nonfatal* injuries, and our opinion did not discuss the possibility that the injured

spouse's life expectancy might have been curtailed in any way by his injuries. Therefore, we did not address in *Rodriguez* whether a plaintiff bringing a common law action for loss of consortium can recover for lost companionship and affection *after* the injured spouse's premature death, or whether the common law recovery is limited to *predeath* damages (with postdeath damages recoverable only by way of a statutory wrongful death cause of action). The answer to this question is central to this case, for it determines whether the Court of Appeal correctly concluded that plaintiff is now seeking a second adjudication over postdeath damages, or whether, as plaintiff claims, she is seeking only a first adjudication concerning a category of damages that was simply not available in her previous common law action.

With this background concerning the history and scope of the causes of action at issue here, we turn to the specific res judicata question that defendant raised in its demurrer to plaintiff's wrongful death complaint.

## B

■ "As generally understood, '[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy.' [Citation.] The doctrine 'has a double aspect.' [Citation.] 'In its primary aspect,' commonly known as claim preclusion, it 'operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]' [Citation.] 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he prior judgment . . . "operates" ' in 'a second suit . . . based on a different cause of action . . . "as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." [Citation.]' [Citation.] 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]' " (*People v. Barragan* (2004) 32 Cal.4th 236, 252–253 [9 Cal.Rptr.3d 76, 83 P.3d 480].)

■ Here, we are concerned with the claim preclusion aspect of res judicata. To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have "consistently applied the 'primary rights' theory." (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) Under this theory, "[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on

whom the duty rests. 'Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . .' " (*McKee v. Dodd* (1908) 152 Cal. 637, 641 [93 P. 854].)

■ "In California the phrase 'causes of action' is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . ." (*Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal.2d 845, 847–848 [13 Cal.Rptr. 194, 361 P.2d 914].) But for purposes of applying the doctrine of res judicata, the phrase "cause of action" has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) As we explained in *Slater v. Blackwood, supra,* 15 Cal.3d at page 795: "[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief.' [Citations.]" Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954 [160 Cal.Rptr. 141, 603 P.2d 58].)

Here, the complaint in plaintiff's common law action for loss of consortium alleged that Philip Morris's wrongful conduct "permanently deprived" her of her husband's companionship and affection. The *primary right* was the right not to be wrongfully deprived of spousal companionship and affection, and the *corresponding duty* was the duty not to wrongfully deprive a person of spousal companionship and affection. The breach was the conduct of defendant Philip Morris that wrongfully induced plaintiff's husband to smoke defendant's cigarettes. It does not matter what weakness, if any, in plaintiff's previous lawsuit might have led her to dismiss it with prejudice. Once plaintiff did so, the primary right and the breach of duty (together, the cause of action) had been adjudicated in defendant's favor. Therefore, plaintiff could not later allege the same breach of duty in a second lawsuit against defendant, based on a new legal theory (statutory wrongful death).

The record before us does not indicate plaintiff's reason for dismissing her first lawsuit. Whatever the reason may have been for dismissing that action, the relevant point for our purposes is what plaintiff there *alleged*, because that allegation indicates what primary right was adjudicated as a consequence of

the dismissal with prejudice. Plaintiff's allegation in the previous action was that defendant Philip Morris's wrongful conduct had "permanently deprived" her of her husband's companionship and affection. Whether or not that was factually true, that was the cause of action that she brought and dismissed with prejudice, and she cannot now litigate the same cause of action a second time.

Plaintiff contends that in her previous action for loss of consortium, she was legally barred from recovering damages for *postdeath* loss of consortium, and therefore her present wrongful death action does not involve the same primary right as the previous action. She argues that a loss of consortium action is a common law tort action permitting recovery for loss of companionship and affection *during the lifetime* of a wrongfully injured spouse (see *Rodriguez, supra,* 12 Cal.3d 382), whereas a wrongful death action is a statutorily created action permitting recovery for (among other things) loss of companionship and affection *after the death* of a wrongfully killed spouse. The latter action is a creature of statute, permitting a type of recovery that—absent the statute—is unavailable because of the common law rule barring recovery for injuries that are based on the death of a person. Therefore, in plaintiff's view, a wrongful death action for loss of consortium involves a primary right that is different from the primary right underlying a common law action for loss of consortium. Plaintiff cites several cases that state, in contexts other than the one presented here, that statutory wrongful death actions are distinct from common law actions for loss of consortium. (See, e.g., *Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 862 [97 Cal.Rptr.2d 240]; *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 243 [173 Cal.Rptr. 345]; *Lantis v. Condon* (1979) 95 Cal.App.3d 152, 158 [157 Cal.Rptr. 22].) Plaintiff's arguments do not persuade us.

■ The general rule is that a tort plaintiff may recover prospective damages, as long as it is sufficiently certain that the detriment will occur. Section 3333 of the Civil Code provides: "For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for *all the detriment proximately caused thereby*, whether it could have been anticipated or not." (Italics added.) The Civil Code expressly provides that this amount includes compensation for prospective losses: "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or *certain to result in the future*." (Civ. Code, § 3283, italics added; see also *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 995 [16 Cal.Rptr.2d 787] [discussing quantum of evidence necessary to support an award of prospective damages].) ■ Therefore, in a common law action for loss of consortium, the plaintiff can recover not only for the loss of companionship and affection through the time of the trial but also for any *future* loss of companionship and affection that is sufficiently certain to occur. In *Rodriguez,* we held that when a

plaintiff's spouse is permanently disabled as a result of a defendant's wrongdoing, future (posttrial) loss of companionship and affection is sufficiently certain to permit an award of prospective damages. (See *Rodriguez, supra,* 12 Cal.3d at pp. 405–406.) If instead the injured spouse will soon *die* as a result of his or her injuries, the future (posttrial) loss of companionship and affection is no less certain. In short, we see no reason to make an exception here to the general rule permitting an award of prospective damages in civil tort actions. Therefore, under long-standing principles of tort liability, the recovery of prospective damages in a common law action for loss of consortium includes damages for lost companionship and affection resulting from the anticipated (and sufficiently certain) premature death of the injured spouse.

██ Of course, the plaintiff in a common law action for loss of consortium may not recover for loss during a period in which the companionship and affection of the injured spouse would have been lost anyway, irrespective of the defendant's wrongdoing, and therefore the life expectancy of the plaintiff and the life expectancy of the injured spouse, whichever is shorter, necessarily places an outer limit on damages. (See *Truhitte v. French Hospital* (1982) 128 Cal.App.3d 332, 353 [180 Cal.Rptr. 152].) In this context, however, when we speak of the life expectancy of the injured spouse, we are referring to the life expectancy that the injured spouse would have had if the injury had never occurred. In other words, in the case of a sudden injury we are referring to the life expectancy that the injured spouse had immediately *before* that injury, and in the case of a cumulative injury like the one at issue here we are referring to the life expectancy that the injured spouse would have had absent the harmful conditions to which the defendant wrongfully exposed that spouse. If the life expectancy of the injured spouse was curtailed as a result of the injury, then the resulting "lost years" are no less a deprivation of companionship and affection to the plaintiff than a permanent disability would be, and they are a proper component of prospective damages under Civil Code section 3283. ██ We conclude therefore that a plaintiff in a common law action for loss of consortium can recover prospective damages for the period *after* the injured spouse's death, based on the life expectancy that the injured spouse would have had if the injury had never occurred.

Here, plaintiff did in fact seek such damages. In her previous common law action for loss of consortium, plaintiff alleged that defendant's wrongful conduct had caused her husband's lung cancer and that as a result of the cancer he was "unable to perform the necessary duties as a spouse" and would "not be able to perform such work, services, and duties *in the future.*" (Italics added.) Moreover, plaintiff's complaint expressly asserted that she had been "*permanently* deprived" of her husband's consortium. (Italics added.) Presumably this latter assertion was based on the debilitating and

incurable nature of her husband's illness and the great likelihood that it would lead to premature death.

■ Our conclusion is in harmony with our holding in *Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368, 695 P.2d 665]. That case involved a plaintiff who claimed that the defendant hospital had failed to diagnose his heart condition and that as a result he suffered a heart attack that sharply curtailed his life expectancy. (*Id.* at pp. 143–145.) The plaintiff, however, did not assert that the heart attack had any effect on his earnings while he remained alive. (*Id.* at p. 145, fn. 1.) The jury found liability and awarded an amount for lost earnings based on the reduction in the plaintiff's life expectancy. (*Id.* at p. 145.) We upheld this award of damages for "lost years" (*id.* at pp. 153–154), quoting the United States Supreme Court's statement that " '[u]nder the prevailing American rule, a tort victim suing for damages for permanent injuries is permitted to base his recovery "on his prospective earnings for the balance of his life expectancy at the time of his injury *undiminished by any shortening of that expectancy as a result of the injury.*" ' " (*Fein*, at p. 153, quoting *Sea-Land Services, Inc. v. Gaudet* (1974) 414 U.S. 573, 594 [39 L.Ed.2d 9, 94 S.Ct. 806].)

The damages available in a common law action for loss of consortium are subject to a similar rule. Thus, just as plaintiff's husband here sought (in his personal injury action against defendant) damages for earnings he would have had during the "lost years" *after* his anticipated premature death, so plaintiff sought (in her common law action for loss of consortium) damages for future lost companionship and affection during the years *after* her husband's anticipated premature death.

This conclusion, plaintiff asserts, is contrary to our analysis of the wrongful death statute in *Justus, supra,* 19 Cal.3d 564. We disagree.

■ In *Justus*, we made clear that under California law there has never been a common law right to recover damages for the wrongful death of a spouse or other close relative. We acknowledged that the common law may have evolved to the point that some *other* jurisdictions were recognizing such a right. Nevertheless, we reasoned that there was no such right recognized in California in 1862, when California's wrongful death statute was first enacted, and the 1862 wrongful death statute so completely preempted the field that no common law wrongful death cause of action could evolve in California after the statute's enactment. Thus, in California, the right to recover for lost companionship and affection resulting from the wrongful death of a spouse is *purely a creature of statute.* (*Justus, supra,* 19 Cal.3d at pp. 572–575.) We said: "[W]e are persuaded that the Legislature intends to occupy the field of recovery for wrongful death. For this reason the remedy

remains a creature of statute in California [citations] regardless of whether a cause of action for wrongful death did or did not exist at common law. In our state that question is now of academic interest only . . . ." (*Id.* at p. 575.)

Plaintiff here contends that this statement from *Justus* precludes the conclusion that postdeath damages are recoverable in a common law action for loss of consortium. Plaintiff asserts that one may not recover at common law damages of a type (postdeath loss of consortium damages) made the subject of a statutory scheme that occupies the field.

*Justus*, however, did not consider the specific issue now before us. Here, we are not recognizing a *postdeath* common law right to recover for wrongful death; rather, we are recognizing that, in a *predeath* common law action for loss of consortium, future damages are recoverable, including damages that might result from the impending premature death of the injured spouse. We stand by our conclusion in *Justus, supra,* 19 Cal.3d at page 575, that the wrongful death law occupies the field, leaving no room for parallel development of the common law. We do not share plaintiff's view, however, that the wrongful death law precludes a plaintiff in a common law loss of consortium action *accruing before death* from recovering postdeath damages. Also, at issue in *Justus* was whether we should recognize a common law right of action based on the wrongful death of a fetus. Doing so would have required us to establish an entirely new category of wrongful death recovery, and we declined to interfere so directly with the statutory scheme. Here, by contrast, we are merely recognizing a common law right to recover a component of damages that is already recoverable under the wrongful death statute, and therefore our holding does not extend the substantive limits of the wrongful death statute.

In arguing that postdeath damages are not recoverable in a common law action for loss of consortium, plaintiff also relies on a comment in the Restatement Second of Torts (Restatement). Again, we disagree.

The section of the Restatement addressing loss of consortium claims states in its comment: "In case of death resulting to the impaired spouse, the deprived spouse may recover under the rule stated in this Section only for harm to his or her interests and expense *incurred between the injury and death. For any loss sustained as a result of the death of the impaired spouse, the other spouse must recover, if at all, under a wrongful death statute.*" (Rest., § 693, com. f, p. 497, italics added.) As the Court of Appeal here pointed out, this comment refers to situations in which the common law loss of consortium claim is brought *after* the death of the injured spouse and joined with a statutory wrongful death claim. For this reason, the introductory phrase of the comment is not "[i]n case death *is likely to result* to the impaired spouse . . . ." Instead, the comment refers to the death as a completed fact.

When a common law loss of consortium claim is brought *after* the death of the injured spouse and joined with a statutory wrongful death claim, it may be appropriate to limit the common law claim to the lifetime of the injured spouse in order to avoid a double recovery with respect to postdeath damages. But we do not have that situation here. Rather, here plaintiff brought her common law loss of consortium claim *before* her husband's death, in an action separate from the current wrongful death action. To read the Restatement's comment as applicable to a loss of consortium claim brought and resolved before the injured spouse's death, as plaintiff urges, would be inconsistent with our long-standing statutory rule that a tort plaintiff may recover *all prospective damages that are sufficiently certain.* (Civ. Code, §§ 3283, 3333.) When a person has been wrongfully deprived of spousal companionship and affection and the injured spouse is likely to soon die from the injuries, ongoing detriment is sufficiently certain to satisfy this statutory standard.

We also note that to adopt plaintiff's proposed rule—limiting common law loss of consortium claims to the lifetime of the injured spouse—would often lead, in the case of a life-curtailing injury, to multiple proceedings and the possibility of a double recovery or an inadequate recovery. Assuming the plaintiff brings a loss of consortium action before the death of the injured spouse, the jury would be forced—under plaintiff's proposed rule—to speculate about how long the injured spouse will live. If the jury guesses wrong, then the plaintiff will either be over- or undercompensated depending on the injured spouse's actual life span. If, after the injured spouse dies, the plaintiff brings a wrongful death action to recover postdeath damages, the result is a second lawsuit concerning essentially the same issue. The whole problem is largely avoided if the plaintiff in a common law action for loss of consortium can recover damages for the period *after* the death of the injured spouse, as our law permits.

In this case, the dissenting Court of Appeal justice asserted that a primary right is in essence the right to be free of a particular injury, and in a wrongful death case the injury in question is *the death of the decedent.* Applying this reasoning, the dissent concluded that plaintiff could not possibly have litigated her statutory wrongful death claims when, *before the death of her husband,* she brought her common law action for loss of consortium. The dissent also asserted that, in the common law action for loss of consortium, plaintiff was not able to recover damages for the period *after* her husband's death.

According to the Court of Appeal dissent, plaintiff's present statutory wrongful death action for loss of consortium is a cause of action distinct from her previous common law action for loss of consortium (and therefore it is

not barred by the doctrine of res judicata), but because of the dismissal of the previous action with prejudice, plaintiff is barred in her present action from pursuing damages for *predeath* injury. The erroneous premise of this contention is that plaintiff's previous common law action was limited in scope to predeath damages and that she could recover postdeath damages only by way of her statutory wrongful death action. We reject that premise for the reasons discussed. (See, *ante*, at pp. 799–803.)

In addition, we reject the assertion of the Court of Appeal dissent that the primary right at issue in a wrongful death action is necessarily defined in terms of the death of the decedent. The death of the decedent is certainly a prerequisite if one relies on the wrongful death statute *as one's legal theory of recovery*, but the *primary right* at issue in a wrongful death case may or may not depend on the decedent's death. Here, for example, the primary right is the right not to be permanently and wrongfully deprived of spousal companionship and affection. The violation of that right could be litigated on a common law theory (*Rodriguez, supra*, 12 Cal.3d 382) or on a statutory wrongful death theory (Code Civ. Proc., § 377.60), but irrespective of the legal theory employed, there is only one cause of action.

We conclude that the primary right at issue in plaintiff's current wrongful death action for loss of consortium is the same as the primary right at issue in her previous common law action for loss of consortium, and therefore the res judicata doctrine bars the wrongful death action insofar as it concerns loss of consortium. Plaintiff's previous common law action sought compensation not only for the loss of consortium injury that she had suffered and would continue to suffer as a result of her husband's physical and emotional condition while he was still alive, but also for the loss of consortium injury that she anticipated she would continue to suffer as a result of her husband's premature death. Plaintiff's present wrongful death action likewise seeks compensation for the loss of consortium injury that she has suffered and will continue to suffer as a result of her husband's premature death. With respect to postdeath loss of consortium, the two actions concern the same plaintiff seeking the same damages from the same defendant for the same harm, and to that extent they involve the same primary right. Plaintiff dismissed her previous action with prejudice. Because such a dismissal is the equivalent of a final judgment on the merits (see, *ante*, at p. 793), plaintiff may not now litigate the same primary right a second time.[6]

---

[6] Anticipating this conclusion, plaintiff argues alternatively that the state and federal due process guarantees prevent us from applying our conclusion retroactively. In other words, she contends that in 2001, when her common law action for loss of consortium was dismissed, the law limited her recovery to damages she would sustain during her injured husband's lifetime,

## III

The judgment of the Court of Appeal is affirmed.

Baxter, J., Chin, J., and Corrigan, J., concurred.

**MORENO, J.,** Dissenting.—I disagree with the majority's analysis and conclusion. I conclude rather that a statutory wrongful death action is different from a common law action for loss of consortium and implicates a distinct primary right. As discussed below, neither is plaintiff's claim disposed of by collateral estoppel or the rule against double recovery. Nor is there any indication that plaintiff and defendant entered into a settlement agreement that encompassed the wrongful death claim. I would therefore conclude that defendant has failed to carry its burden of demonstrating that plaintiff's wrongful death claim is barred.

As the majority explains, Judy Boeken voluntarily dismissed with prejudice an action for common law loss of consortium that was alleged to be "permanent." We must determine whether such a voluntary dismissal acted via res judicata to bar plaintiff's subsequent wrongful death action.

As the majority recounts, to determine whether two proceedings involve identical causes of action, such that the latter proceeding would be barred by the claim preclusion aspect of res judicata, California courts have "consistently applied the 'primary rights' theory." (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) Under this theory, "[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. 'Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . .' " (*McKee v. Dodd* (1908) 152 Cal. 637, 641 [93 P. 854].) We consider causes of action distinct for res judicata purposes only when they involve an invasion of different primary rights, wherein "the 'cause of

---

and she argues that, even if we now adopt a different rule, she should still be permitted to prosecute her wrongful death action because that action was viable when it first accrued in 2002. Plaintiff's argument lacks merit.

In reaching our decision, we have not changed the law. The rule that a tort plaintiff may recover damages for all detriment that is certain, including *future* detriment, is not a new rule of law that we are just now recognizing; rather, it is a common law rule that was codified in California's Civil Code in 1872. (Civ. Code, § 3283.) When plaintiff brought her common law loss of consortium action in 2000, she expressly alleged that she had been "permanently deprived" of her husband's consortium, and the law at that time entitled her to prospective damages, including damages for detriment she would suffer after her husband's death. Because plaintiff dismissed that action with prejudice, she may not now seek redress for the same harm in her wrongful death action.

action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant." (*Slater, supra*, at p. 795.)

As has been recognized, "[N]o generally approved and adequately defined system of classification of primary rights exists; indeed, primary rights are usually defined in terms of such abstraction and elasticity as to be of little or no predictive significance. The concept of 'cause of action' may thus be enlarged or narrowed in proportion to the breath of the particular court's concept of 'primary right'." (6 Grossman & Van Alstyne, Cal. Practice: Pleading—Civil Actions (2d ed. 1981) § 761, p. 288.) Applying primary rights doctrine to wrongful death and loss of consortium actions presents a particular challenge because of the overlapping nature of these two actions. Notwithstanding these analytical difficulties, there are compelling reasons to view a statutory wrongful death cause of action and a common law loss of consortium action as different causes of action implicating distinct primary rights.

As stated in *Justus v. Atchison* (1977) 19 Cal.3d 564, 571 [139 Cal.Rptr. 97, 565 P.2d 122], "the cause of action for wrongful death in this state is a pure creature of statute," originating with the passage of the first wrongful death statute in 1862. The court in *Justus*, in rejecting a claim that a fetus is a person for purposes of the wrongful death statute, made clear that the question, like all questions regarding the scope of wrongful death law, was purely a matter of statutory construction. (*Ibid.*) In contrast, the rule in *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669], involves a common law judge-made rule permitting a person to recover damages for loss of consortium from the serious but nonfatal injury of his or her spouse. The *Justus* court recognized that the judicial creation of a common law loss of consortium action was permissible precisely because it was distinct from, and did not alter, a statutorily authorized wrongful death cause of action. (*Justus, supra*, at p. 572.)

The distinction between the two causes of action is made apparent by an examination of their elements. "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs. [Citations.]" (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 938, p. 352.) Those pecuniary losses may include " '(1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship.' " (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1264 [45 Cal.Rptr.3d 222].) The latter form of damages is also called loss of consortium. A wrongful death plaintiff may also recover reasonable funeral expenses. (*Francis v. Sauve* (1963) 222 Cal.App.2d 102, 124 [34 Cal.Rptr. 754].)

In contrast, a common law loss of consortium action must allege nonfatal tortious injury that is "sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired." (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 932–933 [167 Cal.Rptr. 831, 616 P.2d 813].) A common law action for loss of consortium does not include an action for loss of financial support, which is generally recovered in a tort action brought by the injured spouse. (*Rodriguez v. Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 406.) Also, the loss of consortium action applies only to spouses (see *Borer v. American Airlines, Inc.* (1977) 19 Cal.3d 441, 453 [138 Cal.Rptr. 302, 563 P.2d 858] [rejecting a child's action for loss of parental consortium]), whereas a wrongful death action applies to both the spouse[1] and children of the decedent (Code Civ. Proc., § 377.60, subd. (a)).

The distinctness of these two causes of action can be seen clearly by considering when they begin to accrue. Were the two actions really a single action, then as soon as a person suffered a loss of consortium from the serious injury of a spouse, the statute of limitations would begin on all loss of consortium claims. (See *Meighan v. Shone* (1995) 34 Cal.App.4th 1025, 1034 [40 Cal.Rptr.2d 744].) A wrongful death claim filed outside the limitations period for bringing the common law loss of consortium claim would be time-barred. (See *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1616–1619 [2 Cal.Rptr.2d 796] [personal injury cause of action begins to accrue with the first indication of appreciable harm].) But in fact it is indisputable that the statute of limitations for a wrongful death claim does not begin to run until the death of the spouse or other relative at the earliest (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79]), regardless of the timing of any predeath injuries. Nothing in the majority opinion alters that basic principle. Were that not so, then the common law cause of action would alter the requirements for bringing a statutory wrongful death cause of action and in effect amend the wrongful death statute—something it may not do. (See *Justus v. Atchison, supra,* 19 Cal.3d at p. 572.) Thus, although res judicata precludes a party from raising in subsequent litigation against the same party a " 'matter . . . within the scope of the [previous] action, related to the subject matter and relevant to the issues, so that it *could* have been raised . . .' " (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 [17 Cal.Rptr.2d 639]), in the present case a wrongful death claim could not have been raised at the time the loss of consortium claim was pleaded and then dismissed, because the former claim had not yet accrued.

---

[1] The wrongful death statute also applies to domestic partners. (Code Civ. Proc., § 377.60, subd. (a).) For shorthand purposes, I will use the term "spouse" to include "domestic partner."

Moreover, as noted, funeral expenses are recoverable in wrongful death actions. (*Francis v. Sauve, supra,* 222 Cal.App.2d at p. 124.) The majority concludes that plaintiff forfeited her appeal of her claim for funeral expenses in the present case. (Maj. opn., *ante,* at p. 793, fn. 2.) Be that as it may, the majority does not contest that, but for this forfeiture, plaintiff was not barred from pursuing a wrongful death action in which funeral expenses could be recovered. Moreover, as noted, a loss of consortium action does not include damages for loss of economic support and therefore does not bar a wrongful death claimant from seeking such damages.[2] So, the necessary implication of the majority opinion appears to be that a wrongful death action consists of several separate primary rights: the right to economic support, the right to consortium, and the right to funeral expenses, and only the loss of consortium "primary right" is foreclosed by a prior common law loss of consortium action.

But there is no authority for parsing a wrongful death claim in this manner into separate primary rights. Indeed, in a wrongful death suit in which the causes of action "were denominated as: (1) negligence; (2) strict liability; (3) breach of implied warranty; and (4) 'wrongful death,' " one Court of Appeal noted that "[m]ore properly characterized . . . , the plaintiffs' suit consisted of but *one true 'cause of action,'* that cause of action being for the injury they had suffered as a result of the wrongful death of the decedent [citation], and the four 'causes of action' were actually counts based on *the same primary right* of plaintiffs and the same primary duty of defendants, each of which merely alleged additional circumstances out of which the primary right and primary duty arose." (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1181–1182 [272 Cal.Rptr. 304], italics added.) In other words, wrongful death is most properly rcharacterized as consisting of a single primary right, created by statute and arising at the time of decedent's death, to be free of various pecuniary losses that result from tortious conduct leading to a spouse's or child's death. This statutorily created primary right is plainly distinct from the common law cause of action for loss of consortium arising from a nonfatal injury.

Contrary to the majority's principal argument, the distinctness of the primary rights arising from a wrongful death and common law loss of consortium causes of action is not altered by the fact that a plaintiff in a common law loss of consortium action can recover damages for the spouse's reduced life expectancy, in other words, for *some* of the damages that are recoverable in a subsequent wrongful death action. As a leading exponent of primary rights theory, John Norton Pomeroy, stated, "if the facts alleged in

---

[2] Loss of economic support damages would not be available in a wrongful death action, however, if they have already been recovered in the injured spouse's personal injury action, as in the present case, according to the rule against double recovery discussed below.

the pleading show that the plaintiff is possessed of two or more distinct and separate primary rights, each of which has been invaded . . . it follows . . . that the plaintiff has united two or more causes of action, *although the remedial rights arising from each, and the corresponding reliefs, may be exactly of the same kind and nature.*" (Pomeroy, Code Remedies: Remedies and Remedial Rights (5th rev. ed. 1929) Joinder of Causes of Action, § 350, p. 535, italics added.) Moreover, courts have made clear, particularly in the context of litigation involving both statutory and common law causes of action, that "different primary rights may be violated by the same wrongful conduct." (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 342 [29 Cal.Rptr.2d 314] [a corporation's failure to indemnify may violate an employee's statutory right to indemnity under Corp. Code, § 317 and a separate contractual right to indemnity]; see also *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954–955 [160 Cal.Rptr. 141, 603 P.2d 58] [employer's racially discriminatory conduct may violate distinct primary rights under federal tit. VII law and state law regarding slander and intentional infliction of emotional distress]; *Le Parc Community Assn. v. Workers' Comp. Appeals Board* (2003) 110 Cal.App.4th 1161, 1172 [2 Cal.Rptr.3d 408] [uninsured employer's negligence may violate employee's distinct primary rights under workers' compensation and tort law]; 1 Pomeroy, A Treatise on Equity Jurisprudence (5th ed. 1941) The Constituent Parts of Equity, § 91, p. 120 ["the same wrongful act or default may invade many different rights"].)

In sum, a defendant's tortious conduct resulting in personal injury may give rise to two distinct causes of action in that person's spouse: a common law loss of consortium claim if the nonfatal injuries are sufficiently serious to result in that loss, and a later-accruing wrongful death claim if the injuries result in the spouse's death, with a spouse being able to claim various damages for pecuniary loss, including a loss of consortium. This is not to say, however, that litigation of the loss of consortium action may not limit the scope of a subsequent wrongful death action. Inasmuch as that litigation recovers for loss of consortium resulting from a shortened lifespan, i.e., the same loss of consortium damages as would be recoverable in a wrongful death action, a plaintiff cannot again recover those same damages in a wrongful death action, for such would be an improper double recovery. (See *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158–1159 [17 Cal.Rptr.2d 608, 847 P.2d 574].) Nothing in the record here indicates that plaintiff would be double recovering for loss of consortium damages.

Collateral estoppel also precludes a party from litigating in a second action against the same party or its privity an issue that was "actually litigated" in a former proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) In determining what issues were actually litigated and necessarily decided in the previous action, a court may view the record as a whole of the previous action. (See 7 Witkin, Cal. Procedure,

*supra*, Judgment, §§ 417–418, pp. 1062–1064, and cases cited therein.) For example, it may be determined in a trial on a loss of consortium action that the defendant's acts alleged to seriously injure the spouse in fact were not tortious, or were not causally related to the injury, and therefore a plaintiff would be barred through collateral estoppel from bringing a wrongful death action against the same defendant based on the same acts. On the other hand, a judgment against a plaintiff in a common law loss of consortium action may have been due to an inability to demonstrate that there was an injury "sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired." (*Molien v. Kaiser Foundation Hospitals, supra*, 27 Cal.3d at pp. 932–933; see *Park v. Standard Chem Way Co.* (1976) 60 Cal.App.3d 47, 50–51 [131 Cal.Rptr. 338].) When it is clear from the record that a spousal injury was insufficiently serious to give rise to a common law loss of consortium action, the central issue in a wrongful death action—whether defendant's tortious action caused the decedent's death—has not been litigated, and therefore would not be barred by collateral estoppel.

Although there is some controversy in the matter, the dominant rule in this state is that an issue that has been settled by a voluntary dismissal with prejudice does not constitute an issue that has been "actually litigated" for collateral estoppel purposes. (*Rice v. Crow* (2000) 81 Cal.App.4th 725, 736–737 [97 Cal.Rptr.2d 110], and cases cited therein; but see *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1333–1334 [35 Cal.Rptr.3d 496].) The California cases follow the rules set forth in the Restatement Second of Judgments that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated" and therefore collateral estoppel does not apply in a subsequent action. (Rest.2d Judgments, § 27, com. e, p. 257.) But this is not to say that a common law loss of consortium action cannot be terminated in such a way as to resolve all loss of consortium claims. "The judgment may be conclusive . . . with respect to one or more issues, if the parties have entered an agreement manifesting such an intention." (*Ibid.*; see also *Rice, supra*, 81 Cal.App.4th at p. 737, fn. 1.) Because there is no settlement in the record to accompany the dismissal in the present case, we cannot divine the intentions of the parties. Therefore, based on the voluntary dismissal alone, we cannot say that the subsequent wrongful death action is barred.

In the present case, plaintiff, understandably unable to anticipate the rule the majority announces today, apparently did not believe that her voluntary dismissal of her loss of consortium claim would bar a wrongful death claim. After today, those who seek to resolve a common law loss of consortium claim but do not wish to preclude litigation of a wrongful death claim will not use a voluntary dismissal with prejudice as a vehicle for doing so. Such is

the sole practical effect of the majority opinion other than the resolution of the present case. If, however, the rule I propose were adopted, then those who dismiss their common law loss of consortium claims would still be able to use voluntary dismissals with prejudice as a means of doing so, and courts would look to accompanying settlement agreements to determine precisely the extent to which the parties were also relinquishing wrongful death claims.

George, C. J., and Werdegar, J., concurred.