Filed 8/31/16  Carter v. Dominguez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES C. CARTER, JR., | B265225 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TF002544) |
| v. | |
| DELIA DOMINGUEZ, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Dianna Gould-Saltman, Judge.  Affirmed.

La Quinta Law Group and Timothy L. Ewanyshyn for Plaintiff and Appellant.

James Migler for Defendant and Respondent.

Appellant James C. Carter, Jr. (grandfather) appeals from an order denying his request for visitation with his minor grandson Aidan (born Aug. 2003). We affirm the trial court's order.

## BACKGROUND

**Grandfather's joinder and judgment awarding mother sole custody**

Grandfather is Aidan's paternal grandfather. Respondent Delia Dominguez (mother) is Aidan's mother, and James Carter, III (father), is Aidan's father.[1] Aidan's parents separated in 2004, and a custody dispute ensued. Both parents initially consented to having appellant joined as third party in this case.

Pursuant to a judgment entered on May 1, 2007, mother was awarded sole legal and physical custody of Aidan. Father was accorded supervised visits with Aidan every Saturday afternoon and three one-week vacation periods. The judgment ordered grandfather to stay at least 100 yards away from mother and prohibited him from contacting, harassing, attacking, striking, threatening, assaulting, stalking, or disturbing her. The judgment further prohibited contact between grandfather and Aidan.

After entry of the judgment, the parties agreed that grandfather could have visits with Aidan, and several visits occurred between 2010 and early 2014. In early 2014, mother stopped allowing grandfather's visits.

**Mother's petition to dismiss grandfather's joinder**

In July 2014, mother filed a petition for an order dismissing grandfather's joinder as a party to the case. In response, grandfather filed a declaration in which he recounted his visits with Aidan over the years and mother's refusal to allow visits since January 1, 2014. Grandfather requested an order according him visits with Aidan.

At the October 3, 2014 hearing on mother's petition, father testified that he supported mother's request to remove grandfather as a joined party in the case. Father stated that the parties had previously agreed to the joinder because father lived with grandfather at the time and grandfather was helping him. Father said that he no longer

---

[1]     Father is not a party to this appeal.

2

needed grandfather's help, that he and mother communicated regularly about Aidan and were in agreement, and that there was no reason for grandfather to remain in the case. Father further stated that he opposed contact between grandfather and Aidan because grandfather was a violent person and had threatened to kill mother in the past.

Mother testified that she had initially agreed to grandfather's joinder so that an order requiring him to stay away from her could be placed on the record. She said she wanted grandfather removed from the case because of his violent past. Mother conceded, however, that there had been no recent incidents of violence. Mother said that grandfather had harassed her by filing an action for damages against her in small claims court for injuries that Aidan allegedly inflicted on grandfather's nephew during a 2013 Christmas visit with grandfather. The action was dismissed when grandfather failed to appear in court.

At the conclusion of the hearing, the trial court denied mother's request to remove grandfather from the case. The court found there was insufficient evidence to support the claim that grandfather was a violent person and that grandfather's small claims action against mother was an insufficient basis for terminating his joinder in the case. The trial court denied without prejudice grandfather's request for a visitation order.

**Grandfather's petition for a visitation order**

Grandfather renewed his request for a visitation order by filing the instant petition on November 19, 2014.[2] In support of the petition, grandfather submitted a declaration in which he stated that his visits with Aidan had been pursuant to court orders and an agreement with mother, but mother had refused to allow visits since January 1, 2014. Grandfather further stated that he had had frequent and continuing contact with Aidan while mother and father were together as well as after they separated in 2004. Grandfather submitted photographs of his visits with Aidan over the years. Grandfather

---

[2]     The petition sought to modify an existing visitation order; however, the record contains no previous order granting grandfather visitation with Aidan. At the hearing on his petition, grandfather stipulated that his visits with Aidan were pursuant to a mutual agreement with mother.

also submitted a declaration by his wife, Jennifer Carter, stating that during their 20-year relationship, grandfather had never been violent nor had he placed any of his grandchildren in harm's way; that grandfather and Aidan were bonded; and that grandfather wanted to be a part of Aidan's life. Grandfather also submitted declarations by the mother and maternal grandmother of Aidan's half-sister, Tatiana, attesting to grandfather's non-violent nature and his affection for Aidan, Tatiana, and his other grandchildren.

Both parents opposed grandfather's petition. After a failed mediation, the matter was set for an evidentiary hearing. Father testified that he opposed visits with grandfather because grandfather was violent and had threatened mother in the past. Father said that he had agreed to grandfather's joinder in order to facilitate father's visits with Aidan, but that father no longer lived in California no longer needed grandfather's involvement. Mother testified that she believed grandfather was a violent person; that as Aidan's sole custodian, she did not believe it was in Aidan's best interest to see grandfather; and that father agreed with her.

Grandfather's wife testified that grandfather had never been violent, that Aidan had visited with them regularly from 2010 to 2014, and that after January 1, 2014, mother stopped responding to their requests for further visits. Grandfather's cousin, Michelle Hodby testified that she lives with grandfather and that she has observed grandfather to have loving relationships with all of his grandchildren, including Aidan.

After hearing argument from the parties, the trial court denied the petition on the ground that grandfather failed to rebut the presumption against visitation accorded by Family Code section 3103, subdivision (d).[3] This appeal followed.

## DISCUSSION

### I. Applicable law and standard of review

Three California statutes govern grandparent visitation with a grandchild. Section 3102 permits visitation by a deceased parent's parents, among others, if such visitation

---

[3] All further statutory references are to the Family Code unless otherwise indicated.

would be in the best interests of the child.  Section 3103 permits grandparent visitation during the pendency of judicial proceedings involving custody of the child, i.e., until entry of a judgment dissolving the marriage and awarding custody of the child.  (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 (*Harris*).)  Section 3104 governs grandparent visitation after a judgment dissolving the marriage and determining custody of the child has been entered.  (*Ibid.*; § 3104, subd. (f).)

Section 3104 provides that a court "may grant reasonable visitation rights to the grandparent if the court does both of the following:  [¶] (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child.  [¶] (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority."  (§ 3104, subd. (a).)

Both section 3103 and section 3104 provide "a rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interest of a minor child" if the parents agree that the grandparent should not be granted visitation rights.  (§§ 3103, subd. (d), 3104, subd. (e).)  Section 3104 applies the same rebuttable presumption against grandparent visitation "if the parent who has been awarded sole legal and physical custody of the child . . . objects to visitation by the grandparent."  (§ 3104, subd. (f).)

To overcome the presumption against visitation, courts have required grandparents to present clear and convincing evidence that visitation is in the minor child's best interest.  (See., e.g., *Ian J. v. Peter M.* (2013) 213 Cal.App.4th 189, 208; *Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1181.)  On appeal, we must affirm the trial court's determination if it is supported by substantial evidence.  (*Ian J.*, at p. 208.)

We review the trial court's denial of grandfather's request for a visitation order under the deferential abuse of discretion standard.  (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610.)  Under this standard, "'[t]he precise measure is whether the trial court could have reasonably concluded that the order in question advanced the "best interest" of the child.  We are required to uphold the ruling if it is correct on any basis,

regardless of whether such basis was actually invoked.  [Citation.]'  [Citation.]"  (*Rich v. Thatcher, supra,* 200 Cal.App.4th at p. 1182.)

The party challenging the trial court's ruling on visitation bears the burden of establishing an abuse of discretion.  """[U]nless a clear case of abuse is shown and unless there has been a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power."  [Citations.]'  [Citations.]" (*Rich v. Thatcher, supra*, 200 Cal.App.4th at p. 1182.)

## II.  No prejudicial error

Grandfather contends the trial court erred by basing its denial of his request for visitation on section 3103, instead of section 3104.  Section 3104, which governs grandparent visitation after a judgment dissolving the marriage and determining custody of the child has been entered (*Harris, supra*, 34 Cal.4th at p. 222), is the applicable statute, as grandfather's petition requesting visitation was filed after entry of a judgment awarding mother sole legal and physical custody of Aidan.  Grandfather's claim of legal error is therefore correct.

Grandfather fails to demonstrate, however, that the trial court's erroneous application of section 3103 instead of section 3104 resulted in a miscarriage of justice. As discussed, both section 3103 and section 3104 provide "a rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interest of a minor child" if the parents agree that the grandparent should not be granted visitation rights.  (§§ 3103, subd. (d), 3104, subd. (e).)  The trial court found that the statutory presumption against visitation had not been rebutted in this case.

Grandfather argues that the trial court failed to consider the factors set forth in section 3104 subdivision (a) requiring the court to determine whether Aidan and grandfather had a preexisting relationship and a bond such that visitation was in Aidan's best interest, and to balance Aidan's interest in visitation against the right of the parents to exercise their parental authority.  (§ 3104, subd. (a).)  The record shows, however, that the trial court did weigh the evidence and did balance Aidan's interest in visitation against the rights of the parents.

6

The trial court considered grandfather's moving papers and heard testimony from witnesses, including grandfather's wife and a cousin. At the conclusion of the evidence, grandfather's counsel argued that the presumption against visitation had been rebutted, but the trial court disagreed:

> "It's not. If -- it certainly could be. And one can imagine a circumstance under which it will be. For example, if the grandparents had raised the child from infancy. . . . But the facts as I understand it is that grandpa is a grandpa. He treats his grandchildren lovingly. He treats his grandchildren equally. That's fine. But parents are allowed to decide that they don't want to expose their child to even nice people if that's what they want to do. This isn't a situation in which [grandfather] raised this child. He had a good relationship he believes. And there is evidence to support. And even with that, parents have the autonomy to decide with whom their child spends time and does not. The court doesn't supplant the autonomy of parents to make that decision. In this case, the respondent has sole legal custody of this child. And she has the right to make that decision. But even with that, both parents have come in and told me this is something they do not want for their child. . . . I don't have any reason to think there would not be a benefit to the child spending time with half siblings and cousins. But that's a decision that parents get to make. Unless they are not competent to make them."

The record shows that the trial court considered grandfather's relationship with Aidan and the nature of the bond they shared and that the court balanced Aidan's interest in visitation against the right of the parents to exercise their parental authority. The record discloses no miscarriage of justice.

## III. Res judicata does not apply

Grandfather contends the order denying termination of his joinder in an earlier proceeding is res judicata as to his request for visitation because the prior order was based on the same evidence as that presented here. "'As generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [Citation.] The doctrine "has a double aspect." [Citation.] 'In its primary aspect,' commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the

same cause of action.  [Citation.]"  [Citation.]  "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates'" in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.'  [Citation.]"  [Citation.]  "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same:  (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.  [Citations.]"'  [Citation.]"  (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797.)

There is no identity of claims or issues in the instant proceeding and the prior proceeding in which mother sought to terminate grandfather's joinder.  Mother commenced the earlier proceeding to terminate grandfather's joinder because of his allegedly violent nature.  The court denied mother's request because there was no evidence that grandfather had engaged in any violent behavior towards her within the past several years.  In the instant proceeding, the trial court denied grandfather's request for a visitation order because the court determined that the parents' right to exercise their parental authority outweighed Aidan's interest in visitation.  Res judicata does not apply.

## IV.  Grandfather's status and efforts at negotiation do not entitle him to visitation

Grandfather contends the trial court erred in denying his request "to modify the visitation orders after he had long since been joined as a party and made reasonable efforts to negotiate a visitation plan with the parent having sole custody."  As discussed, the record contains no previous court order according grandfather visitation with Aidan, and grandfather stipulated that his visits were pursuant to an agreement with mother. Grandfather's rights to court ordered visitation with Aidan are purely statutory.  (*Harris, supra*, 34 Cal.4th at p. 219.)  His status as a third party joined to the case accords him no additional or more expansive visitation rights, nor do his efforts to negotiate a visitation

plan with mother.  Grandfather fails to demonstrate that the trial court's denial of his petition for a visitation order constituted an abuse of discretion.

## DISPOSITION

The order denying the petition for a visitation order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                                        CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT