Filed 5/6/21  County of San Diego Dept. of Child Support etc. v. G.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SAN DIEGO, DEPARTMENT OF CHILD SUPPORT SERVICES, | D076378 |
| Plaintiff and Respondent, | (Super. Ct. No. DF254171) |
| v. | |
| G.S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Pennie K. McLaughlin, Commissioner, and Enrique S. Camarena, Judge. Affirmed.

G.S. in pro. per., for Defendant and Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Linda M. Gonzalez, Gregory D. Brown and Marina L. Soto, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant G.S. appeals among others an order denying his request to set aside a 2015 default judgment and order to pay child support for Z.L.

G.S. was served with the summons and complaint for child support, and filed an answer and other documents in response. G.S., however, alleges that he was not properly served with notice of a December 1, 2015 hearing for a judgment establishing parentage and order to pay child support, healthcare, and childcare costs (sometimes, December 1 Judgment and Order). He nonetheless received notice about a month after the December 1 hearing of the December 1 Judgment and Order and was then given a copy of it. However, G.S. did not move to set aside the December 1 Judgment and Order, including under Code of Civil Procedure[1] section 473, subdivision (b), until more than three years after it issued.

As we explain, because the trial court had fundamental jurisdiction over G.S. as a result of his appearance in the action, and because the court was not without statutory power to enter the December 1 Judgment and Order because it was merely voidable and not void, we conclude the December 1 Judgment and Order is valid as a result of G.S.'s failure to timely move to set it aside. As we also explain, we conclude his other arguments lack merit. Affirmed.

## BACKGROUND

A. *Summons, Complaint and Answer*

Plaintiff County of San Diego Department of Child Support Services (Department) filed a complaint against G.S. to establish his parental obligations to Z.L. The summons and complaint were personally served on G.S. on June 24, 2015. In response, G.S. filed an answer and other documents objecting to his obligation to pay child support.

---

[1]     Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

2

B. *The December 1 Judgment and Order*

On October 1, 2015, the Department mailed G.S. notice of a hearing set for December 1, 2015, for a judgment establishing parentage and order to pay child support, healthcare, and childcare costs. The notice was not returned to the Department as undeliverable.

G.S. did not appear at the December 1, 2015 hearing, where Commissioner Pennie K. McLaughlin presided.[2] Mother testified that G.S. was the father of Z.L. At the conclusion of the hearing, the court entered a default judgment, finding that G.S. was Z.L.'s father and ordering G.S. to pay child support in the guideline amount of $1,356 per month, along with other costs to be paid for healthcare and childcare (i.e., the December 1 Judgment and Order). The court also issued a wage and earnings assignment order to collect the amounts due.

A representative of the Department called G.S. in January 2016,[3] discussed the December 1 Judgment and Order with him *and* sent him a copy. G.S. neither moved to set aside the December 1 Judgment and Order nor did he appeal it.

C. *The 2016 Order*

The Department issued an Income Withholding Order/Notice of Support (IWO) to G.S.'s employer in June 2016. G.S. in response filed a request for temporary emergency orders and for a stay of the IWO, on the grounds that there was no lawful order because the IWO was signed by a child support representative, not by a judge; the Department did not comply

---

[2]    Commissioner McLaughlin presided at all hearings that were before a commissioner.

[3]    This call occurred on either January 7 or January 16, 2016.

3

with federal process for establishment of paternity; and he did not voluntarily agree to provide child support.

G.S. was present at the hearing on his motion. G.S. objected to having the commissioner act as a temporary judge. The record shows the commissioner heard testimony and argument from G.S. At the conclusion of the hearing, the commissioner recommended that the request to stay the IWO be denied and that all orders previously issued—including the December 1 Judgment and Order—remain in full force and effect. A judge reviewed the commissioner's recommendations and on August 28, 2016, ratified the previously issued December 1 Judgment and Order and the wage and earnings assignment. G.S. did not appeal this order.

D. *The 2017 Order*

About a year later, G.S. filed a demurrer and request to dismiss the December 1 Judgment and Order. G.S. argued that his due process rights had been violated because of improper service of the 2015 motion, and that he did not voluntarily agree to pay child support, which he believed federal law required. On the latter point, he argued that "child support is strictly voluntary under the federal statute 42 U.S.C. § 466 [subd.] (C) . . . ."

G.S. appeared by telephone at the hearing on October 3, 2017, and agreed to permit Commissioner McLaughlin to act as a temporary judge. The commissioner overruled the demurrer and denied the request to dismiss. She ruled the demurrer and motion were untimely because the subject order and judgment had been filed on December 1, 2015. The court also addressed, and denied, other substantive issues that G.S. had raised in his motion.

4

G.S. appealed the 2017 order by sending a letter to this court on February 26, 2018.[4] We dismissed the appeal, case No. D073631, after G.S. failed to timely pay the filing fee.

E. *The 2019 Order - Subject of this Appeal*

G.S. in 2019 filed yet another motion to set aside the December 1 Judgment and Order. Like his previous motions, G.S. claimed that the commissioner had no authority to enter the December 1 Judgment and Order because G.S. had not received notice of the December 1, 2015 hearing, and because he had not stipulated to allow a commissioner to hear that motion; that the Judgment and Order was invalid because it was fraudulently procured; that the IWO sent to his employer was invalid because it was signed by a child support representative and not by a judge; that there was no written proof that he was the father of Z.L.; and that he had no obligation to pay child support without his voluntary agreement to do so.

In response to the motion, a Department representative reviewed the 2015 proof of service and found the motion had been mailed to G.S.'s correct street address, but the apartment number had been omitted.

Commissioner McLaughlin conducted the proceedings. G.S. objected to her acting as a temporary judge. Commissioner McLaughlin recommended that the motion be denied and that *all* previous orders be affirmed and continued. A judge on September 27, 2019, reviewed and ratified the commissioner's recommendations.

---

[4]     The Department's opposed July 21, 2020 request for judicial notice is granted. We thus take judicial notice of two documents from G.S.'s 2017 appeal. The first document, Exhibit A, is G.S.'s letter to this court requesting an appeal of the 2017 denial of his demurrer and motion to dismiss the original judgment. The second, Exhibit B, is our order dismissing the appeal for failure to timely pay the filing fee.

G.S. raises multiple issues on appeal,[5] including the December 1 Judgment and Order is void; the wage assignment order was invalid because it was signed by a child services representative and not by a judge; and he has no obligation to pay child support because he never agreed to do so.

DISCUSSION

I

Standard of Review

A. *Review of Judgment*

The findings of the court are presumed to be correct, except for issues of law which we review de novo. (*In re Marriage of Marshall* (2018) 23 Cal.App.5th 477, 483.) The appellant has the burden of affirmatively proving error. (*Jameson v. Desta* (2018) 5 Cal.5th 594*,* 608–609.) G.S. has not provided transcripts or settled statements of the motion hearings, so we presume that all matters that would have authorized the court's orders were presented to the court. (*Ibid.*)

B. *Motion to Set Aside Default Judgment*

We review the court's denial of a motion to vacate a default judgment or order for an abuse of discretion, determining whether that decision "exceeded the bounds of reason in light of the circumstances before the court." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230 (*Gorham*); *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1035.) We do not reverse an order unless a

---

5    G.S. filed a notice of appeal before a judge had reviewed the commissioner's recommendations and ordered denial of G.S.'s motion to dismiss. We accept G.S.'s notice of appeal and treat it as having been filed immediately after entry of the judge's order. (Cal. Rules of Ct., rule 8.104 (d)(1) & (2).)

miscarriage of justice resulted. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122.)

## II

## Claim/Issue Preclusion Do Not Apply

The term " 'res judicata' " is often used "as an umbrella term encompassing both claim preclusion and issue preclusion, which [is] described as two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824.)

" ' "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." ' " (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).)

The Department contends the court properly denied the 2019 motion because G.S. in that motion presented issues that already had been fully litigated on the merits. (See *Boeken, supra*, 48 Cal.4th at p. 797; *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1318 (*Williamson*) [final orders cannot be relitigated]; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637–638 [same]; *Wodicka v. Wodicka* (1976) 17 Cal.3d 181, 188 (*Wodika*) [same].) We find this contention unavailing.

7

As noted, there was new information presented in response to G.S.'s 2019 motion: A Department representative stated that the Department failed to include G.S.'s apartment number in the address to which notice of the 2015 motion was mailed. The court, however, did not consider this new information in denying G.S.'s motion. Because the issue previously litigated in G.S.'s motions to set aside the December 1 Judgment and Order was not identical to the issue raised in G.S.'s 2019 motion, we conclude claim preclusion did not apply and bar G.S.'s 2019 motion regarding the validity of the December 1 Judgment and Order. (See *Boeken, supra*, 48 Cal.4th at p. 797.)

III

<u>The December 1 Judgment and Order Was Voidable</u>

G.S. claims the December 1 Judgment and Order was void because he did not receive notice of the hearing. We find this contention unavailing.

A. *Types of Jurisdictional Error*

Assuming, without deciding that, G.S. was not properly served with the October 1, 2015 notice of motion, the question becomes whether the resulting December 1 Judgment and Order was void (such that it could be collaterally attacked at any time under subdivision (d)[6] of section 473), or merely voidable (subject to direct attack only, the time within which to do so provided under subdivision (b) of this statute).

There are two types of jurisdictional errors. " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or

---

[6]    Subdivision (d) of section 473 provides: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any *void* judgment or order." (Italics added.)

8

determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*).)

Somewhat confusingly, the same phrase—lack of jurisdiction—is also used where, although the court has fundamental jurisdiction over the subject matter and the parties, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 55.)

B. *Examination of Statutory Language*

In determining whether the December 1 Judgment and Order is void or merely voidable, our high court has explained that in such situations we must first look to the language of the statute. (*American Contractors, supra,* 33 Cal.4th at p. 661.) Whether a procedural requirement is jurisdictional in the fundamental sense is a matter of legislative intent. (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 343 (*Kabran*).)

Section 1013 is the applicable statute governing notice. In considering whether the statute manifests a jurisdictional intent, relevant considerations include: whether the statute mentions jurisdiction; whether the limitation is stated in " 'unusually emphatic form,' " is reiterated several times in different ways, or asserts that no relief may be granted without compliance with the procedure or time limit; and whether there is a consequence or penalty for noncompliance. (*Kabran, supra,* 2 Cal.5th at pp. 343–344.)

9

Moreover, there is a presumption that courts have jurisdiction unless it is specifically curtailed by the Legislature.  (*Kabran, supra*, 2 Cal.5th at p. 342.)  " 'While the courts are subject to reasonable statutory regulation of procedure and other matters, they will maintain their constitutional powers in order effectively to function as a separate department of government.  [Citations.]  Consequently an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication.' "  (*Id.* at p. 343.)

Section 660, subdivision (c) is a prime example of a statute that, on its face, limits a court's fundamental jurisdiction.  It provides:  "the *power* of the court to rule on a motion for a new trial" expires after certain time periods.  That "power" language goes to fundamental jurisdiction.  (*Kabran*, *supra*, 2 Cal.5th at p. 337.)

Likewise, the statute governing a motion for reconsideration, section 1008, has emphatic jurisdictional language.  Subdivision (e) of that statute provides:  "This section specifies the court's *jurisdiction* with regard to applications for reconsideration of its orders and renewals of previous motions . . . ."  (Italics added.)

In contrast to sections 660 and 1008, section 659a lacks emphatic jurisdictional language.  It provides that in a motion for new trial, a party " 'shall' serve and file affidavits" within a specified period.  It does not mention jurisdiction expressly or deny a trial court the power to grant relief after the expiration of that period.  Plus, it contains no consequence or penalty for noncompliance with the affidavit filing deadlines.  Section 659a is not jurisdictional in the fundamental sense.  (*Kabran*, *supra*, 2 Cal.5th at p. 342.)

Section 1013, applicable in the instant case, is in this respect similar to section 659a, and dissimilar to sections 660 and 1008.  Although the language

10

is mandatory ("shall"), section 1013 does not contain terms that expressly restrict a trial court's power to hear and determine the matter in the absence of compliant service, and section 1013 contains no consequence or penalty for such failure.

Our high court has cautioned, "a party's failure to comply with a mandatory requirement 'does not necessarily mean a court loses *fundamental* jurisdiction resulting in "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " (*Kabran*, *supra*, 2 Cal.5th at p. 341.)  A mandatory procedural rule is binding and a party must comply to avoid a default or other penalty, " '[b]ut failure to comply does not render the proceeding void' " in a fundamental sense.  (*Ibid*.)

Thus, that section 1013 contains a mandatory rule requiring a correct address for service by mail does not resolve whether an order entered where there was a partial address is void or voidable.  As stated by our high court, "jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional." (*Kabran*, *supra*, 2 Cal.5th at p. 342.)  "Noncompliance with a mandatory rule can result in invalidation of the action so long as the noncompliance is properly raised; a party can forfeit its challenge to the noncompliance by failing to object."  (*Ibid*.)

C.  *Case Law Supports the Conclusion the Court Did Not Lack Jurisdiction in the Fundamental Sense When It Issued the December 1 Judgment and Order Allegedly Without Proper Notice to G.S.*

In addition to the absence of statutory language indicating a violation of section 1013 is jurisdictional in the fundamental sense, several cases also support this conclusion.

For example, in *Lee v. An* (2008) 168 Cal.App.4th 558 (*Lee*), the plaintiffs had not given the defendant notice, as required by local rules, that failing to appear at a case management conference could result in the answer

11

being stricken and default entered. Sure enough, the trial court entered default judgment against the defendant after she failed to appear at the case management conference. Subsequently, the court denied her section 473, subdivision (d) motion to vacate. (*Id.* at pp. 562–563.)

On appeal in *Lee*, the defendant argued the judgment was void because she was not given notice that her failure to appear could result in terminating sanctions. (*Id.* at p. 562.) The Court of Appeal acknowledged that "the due process requirement that appellant be given notice of potential sanctions and an opportunity to be heard prior to their imposition" had not been satisfied. (*Id.* at p. 565.) But because the trial court had personal jurisdiction over the defendant and subject matter jurisdiction over the action, the *Lee* court concluded the resulting default and default judgment were "voidable, not void." (*Ibid.*)

Also instructive is *Johnson v. E-Z Ins. Brokerage, Inc.* (2009) 175 Cal.App.4th 86 (*Johnson*). There, the plaintiffs obtained an order for the defendant to appear for deposition, produce documents, and pay monetary sanctions; the trial court warned the defendant it would entertain a motion for terminating sanctions if the defendant did not comply. (*Id.* at p. 90.) When the defendant failed to comply, the plaintiffs applied for and obtained an ex parte order striking the defendant's answer. (*Ibid.*) The trial court subsequently entered a default judgment against the defendant. (*Id.* at p. 91.)

Twelve years later, the defendant in *Johnson* moved to set aside the default and default judgment on the ground they were void because they resulted from a terminating sanction imposed ex parte. (*Johnson*, *supra*, 175 Cal.App.4th at p. 93.) The trial court denied the motion. (*Ibid.*) On appeal, the *Johnson* court determined the trial court had fundamental jurisdiction

12

over both the subject matter and the parties when the default judgment was entered. It therefore affirmed the denial of the motion to set aside because "[b]y awarding terminating sanctions on an ex parte basis, the trial court at most failed to follow proper procedure." (*Id.* at pp. 98, 100.)

Here, as in *Lee* and *Johnson*, the trial court had fundamental jurisdiction: It had personal jurisdiction over G.S. because he was personally served with process in the state and he made a general appearance by filing an answer. (See, e.g., *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) And it had subject matter jurisdiction under Family Code section 17404, subdivision (a), authorizing an "action brought by the local child support agency for the support of a minor child . . . ." Also as in *Lee* and *Johnson*, G.S.'s claim of error is that the December 1 Judgment and Order was entered without following certain mandatory provisions requiring notice. *Lee* and *Johnson* instruct that even if the trial court so erred, the December 1 Judgment and Order was at most voidable, rather than void, and thus, not subject to subdivision (d) of section 473.[7]

D.  *G.S. Forfeited the Alleged Noncompliance with Section 1013 by Failing to Timely Set Aside the Voidable December 1 Judgment and Order*

As noted *ante*, G.S. was aware in January 2016 of the December 1 Judgment and Order. He nonetheless failed to set aside that voidable Judgment and Order under either section 473 or Family Code section 3691. (See *Kabran, supra,* 2 Cal.5th at p. 342 [noting "[n]oncompliance with a mandatory rule can result in invalidation of the action so long as the noncompliance is properly raised," but further noting a party such as G.S. here "can forfeit its challenge to the noncompliance by failing to object"].)

---

7     See footnote 6, *ante*.

Section 473, subdivision (b) provides in part: "(b) The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case *exceeding six months*, after the judgment, dismissal, order, or proceeding was taken." (Italics added.)

The six-month limit in section 473 is mandatory; a court has no authority to grant relief under subdivision (b) of this statute unless an application is made within the six-month period. (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 340 (*Arambula*), citing *Brackett v. Banegas* (1893) 99 Cal. 623, 627–628 and *Davies v. Superior Court* (1964) 228 Cal.App.2d 535, 539–540.) The requirement that a party applying for relief under section 473, subdivision (b), must file and serve a notice of motion within six months serves different purposes, including: protecting the finality of judgments (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981–982 (*Rappleyea*)); providing repose to litigants by ensuring that judgments and orders are free from attack under the statute after a period of time (cf. *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [discussing statutes of limitations]); and avoiding stale claims for relief based on facts that are not within recent memory and where evidence may no longer be preserved. (Cf. *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 777 [also discussing statutes of limitations].)

Here, the record shows G.S. did not move to set aside the December 1 Judgment and Order until April 19, 2019—more than three years after its

14

issuance. Because, as we have concluded, that Judgment and Order was merely voidable and not void, G.S.'s failure to set it aside within six months of its issuance forfeits his right to challenge it under section 1013 for lack of compliance. (See *Arambula*, *supra*, 128 Cal.App.4th at p. 343.)

We also conclude G.S. was not entitled to relief under Family Code section 3690 et seq. because he received notice of the December 1 Judgment and Order in January 2016, when a child support representative called G.S. about the Judgment and Order *and* mailed him a copy. (See Family Code § 3691, subd. (c) [providing in part: "Lack of Notice. [¶] (1) When service of a summons has not resulted in notice to a party in time to defend the action for support and a default or default judgment has been entered against the party in the action, the party may serve and file a notice of motion to set aside the default and for leave to defend the action. The notice of motion shall be served and filed within a reasonable time, but in no event later than *six months* after the party obtains or reasonably should have obtained notice (A) of the support order" (italics added)].)

Because G.S. knew, or should have known, in January 2016 that Commissioner McLaughlin had heard the matter on December 1, 2015 and issued the December 1 Judgment and Order, we likewise conclude his claim is untimely that the commissioner at that hearing allegedly committed fraud by acting as a temporary judge. (See Family Code § 3691, subd. (a) [providing in part: "An action or motion based on fraud shall be brought within *six months* after the date on which the complaining party discovered or reasonably should have discovered the fraud" (italics added)].)

That G.S. was self-represented when the court entered the December 1 Judgment and Order does not change our decision. (See *Rappleyea*, *supra*, 8 Cal.4th at p. 985 [noting a self-represented litigant is held to the same

15

standards as an attorney, and explaining absent such a rule would "require[e] or permit[ ] exceptional treatment of parties who represent themselves [that] would lead to a quagmire in the trial courts, and [that] would be unfair to the other parties to litigation"]; *Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267 [concluding an in propria persona litigant is held to same restrictive rules of procedure as an attorney].)

IV

<u>The Commissioner Had Authority to Act at the December 1, 2015 Hearing</u>

G.S. separately contends the December 1 Judgment and Order must be set aside because Commissioner McLaughlin lacked authority to enter that Judgment and Order, as G.S. had not stipulated to her acting as a temporary judge.  We find this contention unavailing.

In order to speed the determination of child support and paternity issues, the Family Code requires such matters be heard by a court commissioner, if available.  (Fam. Code, §§ 4250, subd. (a)(3) & 4251, subd. (a).)  In the absence of an objection, the commissioner is deemed to act as a "temporary judge," and the commissioner's order on the matter becomes final without further action.  (*Id.*, § 4251, subds. (b) & (c).)  If a party objects at the hearing to the commissioner's acting as a temporary judge, the commissioner is still empowered to hear the matter, make findings, and issue a recommended order, which must be ratified as the order of the court absent a timely objection.  (*Id.*, § 4251, subd. (c).)

Here, the record shows the Department, as the local child support agency providing services to Z.L., was *required* to initiate the proceedings through a commissioner, who either would act as a temporary judge, or make findings of fact and a recommended order to be reviewed by a judge.  (Fam.

16

Code, § 4251, subd. (c).) Thus, G.S.'s contention Commissioner McLaughlin lacked authority at the December 1, 2015 to decide paternity and child support because he did not stipulate to her hearing the matter is contrary to the law, which expressly vests that authority in a commissioner. (*Ibid.*)

G.S. further contends section 259, subdivision (d) requires that the parties to an action stipulate to hearing by a commissioner. G.S. is correct that a commissioner generally does not have authority to hear a matter absent a stipulation by the parties granting the commissioner such authority. (Cal. Const., art. VI, § 21 [providing in part: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge"]; § 259, subd. (d) [authorizing commissioners to "[a]ct as temporary judge when otherwise qualified so to act and when appointed for that purpose, *on stipulation* of the parties litigant" (italics added].)

However, section 259 expressly provides that a commissioner "shall have power" to . . . [¶] . . . [¶] "(f) [h]ear actions to establish paternity and to establish or enforce child and spousal support pursuant to *subdivision (a) of section 4251 of the Family Code*." (Italics added.) We note subdivision (g) of section 259 also gives a commissioner the power to "[h]ear, report on, and determine all uncontested actions and proceedings" but, unlike subdivision (f), subdivision (g) includes language providing that power is "subject to the requirements of subdivision (d)" of section 259.

" ' "When we interpret a statute, . . . '[w]e first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' " ' " (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856 (*Meza*).)

17

Interpreting section 259 as a whole, as we must (see *Meza, supra*, 6 Cal.5th at p. 856), and when considering both (1) the "compelling state interest in creating an expedited process in the courts that is cost-effective and accessible to families, for establishing and enforcing child support orders in cases being enforced by the local child support agency" (Fam. Code, § 4250, subd. (a)(4)); and (2) the Legislature's intent that this expedited process shall be accomplished by "commissioners to hear child support cases being enforced by the local child support agency" (*id.*, subd. (b)(1)); we reject G.S.'s argument that his stipulation was required under subdivision (d) of section 259 in order for Commissioner McLaughlin to act at the December 1, 2015 hearing. (See § 1859 [providing in part: "In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."].)

And, as we have noted, G.S. had notice of the December 1 Judgment and Order about a month after it had issued, and yet he never sought relief from it under either subdivision (b) of section 473 or Family Code section 3691, subdivision (c) on the ground it had been issued by a commissioner as opposed to a trial judge.

V

The Obligation to Pay Child Support

G.S. contends that he is not obliged to pay for child support unless he signed a voluntary acknowledgment of his obligation. G.S. cannot relitigate this claim that was rejected in 2016 and in 2017. (See *Williamson, supra*, 226 Cal.App.4th at p. 1318; *Wodicka, supra*, 17 Cal.3d at p. 188.) In any event, his claim lacks merit.

18

"Every parent has the duty to support his or her minor children. [Citations.] This duty, existing at common law and codified in California since 1872, 'is among the most fundamental obligations recognized by modern society.'" (*County of Los Angeles v. Christopher W.* (2019) 41 Cal.App.5th 827, 833, quoting *Moss v. Superior Court* (1998) 17 Cal.4th 396, 409–410; see also Fam. Code, § 3900 [providing in part: "[T]he father and mother of a minor child have an equal responsibility to support their child"].)

G.S. bases his argument on federal guidelines for state child support enforcement services. To receive federal funds for aid to the needy, a state must certify that it will establish and operate a child support enforcement program that conforms to numerous requirements set forth in Title IV–D of the Social Security Act. (42 U.S.C. §§ 601, 651–669b.[8]) One of the requirements is to create a simple civil process for the voluntary acknowledgment of paternity. (*Id.*, § 666, subd. (a)(5)(C)(i).[9])

Our Legislature has enacted a comprehensive statutory scheme to comply with the federal guidelines. (Fam. Code, § 17000 et seq.; see *County*

---

[8] Defendant refers to section 466 of Title 42 of the United States Code. No such section exists. He has quoted a portion of, and we assume he meant, section 666 of Title 42.

[9] 42 U.S.C. § 666, subd. (a)(5)(C)(i) states:
    "(C) Voluntary paternity acknowledgment
        "(i) Simple civil process
"Procedures for a simple civil process for voluntarily acknowledging paternity under which the State must provide that, before a mother and a putative father can sign an acknowledgment of paternity, the mother and the putative father must be given notice, orally, or through the use of video or audio equipment, and in writing, of the alternatives to, the legal consequences of, and the rights (including, if 1 parent is a minor, any rights afforded due to minority status) and responsibilities that arise from, signing the acknowledgment."

19

*of Lake v. Palla* (2001) 94 Cal.App.4th 418, 421–422.)  California law provides that paternity can be established by a simple process of voluntary acknowledgement and declaration.  (Fam. Code, § 17410.)  But that method is neither mandatory nor exclusive, under either the federal guidelines or state law.  Credible testimony from one of the parties, such as Mother in the instant case, is substantial evidence that is sufficient to support a finding of paternity.  (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1284–1285 [concluding a mother's testimony that a man is the father of her child, when credible, is substantial evidence of paternity]; see *City and County of San Francisco v. Givens* (2000) 85 Cal.App.4th 51, 56–57 [concluding the testimony of a man that he is not father is substantial evidence of non-paternity, when the mother is found not credible].)

Based on the foregoing, it is clear the trial court did not err in its repeated conclusions that G.S. is obligated to pay child support even if G.S. did not voluntarily agree to do so.  Denial of G.S.'s 2019 motion on this ground was therefore entirely proper.

VI

The Order to Withhold Income

G.S. contends the IWO was ineffective because it was signed by a child support representative and not by a judge.  G.S. cannot relitigate this claim that was rejected and not appealed both in 2016 and in 2017.  (See *Williamson*, *supra*, 226 Cal.App.4th at p. 1318; *Wodicka*, *supra*, 17 Cal.3d at p. 188.)  In any event, this claim also lacks merit.

A local child support agency may serve on an obligor's employer an order/notice to withhold income for child support, which "shall have the same force and effect as an earnings assignment order signed by a judicial officer.

20

An order/notice to withhold income for child support . . . shall be considered a notice and shall not require the signature of a judicial officer." (Fam. Code, § 5246, subd. (b).) Therefore, the order/notice to withhold income for child support that was served on G.S.'s employer had the same force and effect as service of an earnings assignment order from a court, even though it was signed by a representative of the Department.[10]

DISPOSITION

The December 1 Judgment and Order and the Income Withholding Order are affirmed. The Department to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.

---

[10] In light of our decision, we decline to reach any other argument raised by the parties in this appeal.

21