Filed 3/21/22 Stremfel v. Kalantar CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JORDAN STREMFEL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NADER KALANTAR,<br><br>    Defendant and Respondent. | B313096<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV23579) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Affirmed.

Arias & Lockwood, Christopher D. Lockwood; Law Offices of Patricia A. Law and Patricia A. Law, for Plaintiff and Appellant.

Law & Brandmeyer, Bryan C. Misshore; Schmid & Voiles, Denise H. Greer and Myrna L. D'Incognito, for Defendant and Respondent.

_____

## INTRODUCTION

This is appellant Jordan Stremfel's second medical negligence lawsuit against respondent Nader Kalantar, M.D., seeking compensation for an anoxic brain injury sustained on May 18, 2016.  Dr. Kalantar performed a tonsillectomy on Stremfel on May 10, 2016, followed on May 18 by emergency surgery to correct a post-tonsillectomy hemorrhage, during which Dr. Kalantar performed a tracheostomy at the request of anesthesiologist Phillip K. Lau, M.D.  In Stremfel's prior suit, in which he named both Dr. Kalantar and Dr. Lau as defendants, Dr. Kalantar moved for summary judgment in reliance on evidence that he complied with the standard of care, including during the May 18 procedure.  Without taking Dr. Lau's deposition, Stremfel filed a notice of non-opposition to Dr. Kalantar's motion for summary judgment.  After entry of judgment in Dr. Kalantar's favor, Stremfel deposed Dr. Lau, then relied on his testimony concerning the May 18 procedure in filing a motion for new trial, which was denied.  In his prior appeal, Stremfel argued his new trial motion should have been granted because, inter alia, Dr. Lau's testimony concerning the May 18 procedure raised triable issues on all elements of his claim against Dr. Kalantar.  We affirmed, concluding

2

Stremfel's new trial motion was without merit because his counsel's unreasonable failure to depose Dr. Lau before declining to oppose Dr. Kalantar's motion for summary judgment prevented Stremfel from making the required showing of reasonable diligence. (*Stremfel v. Kalantar* (Dec. 22, 2020, B300053) 2020 Cal.App.Unpub. LEXIS 8509, at *2 (*Stremfel I*).)

Shortly after filing his new trial motion in the prior suit, Stremfel filed the instant suit against Dr. Kalantar. The prior and instant complaints included nearly identical allegations of negligence and damages, including allegations that Dr. Kalantar negligently undertook Stremfel's surgery and continued care, causing Stremfel to suffer an anoxic brain injury during his post-tonsillectomy hemorrhage on May 18, 2016. The instant complaint differed from the prior complaint in expressly alleging that Dr. Kalantar performed an emergency procedure on May 18, describing the procedure with facts derived from Dr. Lau's deposition testimony in the prior suit, and alleging Dr. Kalantar had fraudulently concealed those facts. Dr. Kalantar demurred to the instant complaint, arguing that in light of the prior judgment in his favor, the instant complaint was barred under, inter alia, the doctrine of claim preclusion. The trial court agreed, sustained the demurrer without leave to amend, and entered judgment.

In this appeal, Stremfel contends the court erred in applying claim preclusion because: (1) the prior suit and the instant suit involved different causes of action, and (2) Dr.

3

Kalantar is estopped from asserting claim preclusion due to his fraudulent concealment of facts concerning the May 18 emergency procedure. In the alternative, Stremfel contends the court abused its discretion in failing to grant him leave to amend his complaint to add certain allegations. Finding no error, we affirm.

## BACKGROUND

### A. Prior Suit

#### 1. Prior Complaint

In April 2017, Stremfel filed his prior medical negligence complaint against Dr. Kalantar, in which he also named a number of Doe defendants. Stremfel subsequently filed an amendment replacing a Doe defendant with Dr. Lau (the anesthesiologist during the May 18 emergency procedure).

The prior complaint alleged that on May 10, 2016, at Arcadia Outpatient Surgery Center, Dr. Kalantar negligently performed a tonsillectomy on Stremfel. The allegations continued, "On May 18, 2016, Plaintiff presented to an emergency facility hemorrhaging profusely from his tonsillectomy site. He sustained an anoxic brain injury during the time that he was hemorrhaging into his ai[]rway and has sustained a permanent injury from that hemorrhage." The complaint further alleged: (1) "Defendants, and each of them, undertook to render surgery and other treatment as were necessary for the proper diagnosis and treatment of Plaintiffs' [*sic*] condition"; and (2)

4

"Defendants, and each of them, so negligently and carelessly failed to exercise the proper degree of knowledge in [*sic*] skill in examining, diagnosing, treating, operating, and continued caring for Plaintiff, that Plaintiff's severe post procedure hemorrhage, and resulting anoxia and disability is believed to be permanent." The complaint sought to recover damages resulting from the defendants' negligence, including general damages in the form of personal injuries, pain and suffering, mental anguish, and emotional distress, as well as special damages in the form of medical expenses and loss of earnings.

### 2. Prior Judgment

Over a year after the filing of the prior complaint (in May 2018), Dr. Kalantar moved for summary judgment. He submitted expert declarations from an otolaryngologist and an anesthesiologist, each of whom opined that Dr. Kalantar had complied with the standard of care in treating Stremfel, including during the May 18 emergency procedure. The anesthesiologist additionally opined that none of Dr. Kalantar's actions or omissions caused Stremfel's injuries. These opinions formed the basis of Dr. Kalantar's motion for summary judgment. A key factual premise for his motion was that during the May 18 emergency procedure, Stremfel "only experienced nominal oxygenation desaturation."

For the purpose of conducting further discovery, the parties agreed to a seven-month continuance of the hearing on the summary judgment motion (from July 2018 to

February 2019). In December 2018, Stremfel deposed Dr. Kalantar. Dr. Kalantar did not recall how long or to what extent Stremfel's oxygenation level was lowered during the May 18 emergency procedure, but testified that the level never dropped to zero. He further testified that he performed a tracheostomy as soon as it became clear that oxygenation desaturation was an issue, and that another doctor (Thuc Bach, M.D.) had assisted him in the tracheostomy -- a fact omitted from his operative report. Stremfel's counsel asked Dr. Kalantar several questions about Dr. Lau's conduct during the procedure, some of which Dr. Kalantar could not answer. At the end of the deposition, Stremfel's counsel asked Dr. Lau's counsel to provide dates in January for Dr. Lau's deposition, but Dr. Lau's counsel did not do so.

On February 13, 2019 (the deadline for Stremfel's opposition to the summary judgment motion), Stremfel filed a notice of non-opposition to Dr. Kalantar's summary judgment motion. On February 27, 2019, the trial court (Judge Jon R. Takasugi) granted the motion, concluding that Dr. Kalantar's expert declarations satisfied his initial burden as a summary judgment movant, and that the motion should be granted "[i]n light of the lack of opposition (and the affirmative notice of non-opposition) . . . ." On May 21, 2019, the court entered judgment in Dr. Kalantar's favor.

6

### *3. New Trial Motion*

In June 2019, Stremfel deposed Dr. Lau. Contradicting Dr. Kalantar's account of the May 18 emergency procedure, Dr. Lau testified that Stremfel's oxygenation level was at zero for several minutes, and that Dr. Kalantar delayed the tracheostomy. Dr. Lau testified that Dr. Kalantar's delay prompted Dr. Lau to ask a nurse to bring a different surgeon to perform the tracheostomy, resulting in the arrival of Dr. Bach, who performed the tracheostomy with Dr. Kalantar.

The same day he deposed Dr. Lau, Stremfel filed a notice of intention to move for a new trial on his claim against Dr. Kalantar, on the ground of newly discovered evidence, viz., Dr. Lau's deposition testimony. Stremfel subsequently submitted a declaration from otolaryngologist Abie Mendelsohn, M.D., who opined that if Dr. Lau's testimony was accurate, Dr. Kalantar breached the standard of care during the May 18 emergency procedure in a manner resulting in poor oxygenation and injury to Stremfel's brain.

With the agreement of both parties, the trial court continued the hearing on the new trial motion to August 13, 2019 -- after the statutory deadline for a ruling on the motion. (See Code Civ. Proc., § 660, subd. (c).) Upon the expiration of the deadline, the court lost jurisdiction to rule on the motion, which was denied by operation of law. (See *ibid.*)

7

### 4. Prior Appeal

On appeal from the prior judgment in Dr. Kalantar's favor, Stremfel contended the trial court erred by denying his motion for new trial.[1]  He argued, inter alia, that had Dr. Lau's deposition testimony and Dr. Mendelsohn's related opinions concerning the May 18 emergency procedure been "available" at the time for opposing Dr. Kalantar's motion for summary judgment, they "would have raised triable controversies as to all elements of the malpractice claim, [including] duty, breach, and causation of injury, requiring denial of the motion."  He further argued that Dr. Kalantar had misrepresented the May 18 procedure in his operative report and deposition testimony, preventing Stremfel's counsel from foreseeing the materiality of Dr. Lau's deposition testimony at the time she declined to oppose Dr. Kalantar's summary judgment motion.

In our opinion affirming the prior judgment, we concluded Stremfel's motion for new trial was without merit, as his counsel's unreasonable failure to depose Dr. Lau before declining to oppose Dr. Kalantar's motion for summary judgment prevented Stremfel from making the required showing of reasonable diligence.  (*Stremfel I, supra,* 2020 Cal.App.Unpub. LEXIS 8509, at *13.)  We reasoned, in

---

[1]  We have granted Stremfel's request that we take judicial notice of the record of the prior appeal, and our opinion in that appeal.  On our own motion, we also take judicial notice of Stremfel's briefs on that appeal.

8

part, that any competent plaintiff's counsel would have timely deposed Dr. Lau, because he was both a codefendant and a percipient witness to Dr. Kalantar's conduct during the May 18 emergency procedure, rendering him an obvious potential source of information contradicting Dr. Kalantar's account of the procedure. (*Id.* at *13, *16-*17.) We observed that Dr. Kalantar's deposition testimony, in which he failed to recall details about Stremfel's oxygenation desaturation and revealed for the first time that he was assisted in the tracheostomy by Dr. Bach, provided additional reason to recognize Dr. Lau as a material witness. (*Id.* at *17.) We further observed that Stremfel's counsel evidently *had* recognized Dr. Lau as a material witness by the time she deposed Dr. Kalantar, as she had named Dr. Lau as a codefendant nine months earlier, questioned Dr. Kalantar about Dr. Lau's conduct during the emergency procedure, and asked Dr. Lau's counsel to provide dates for his deposition. (*Id.* at *15-*16.) We therefore rejected Stremfel's reliance on the alleged concealment of facts as an excuse for his counsel's purported ignorance of the asserted materiality of Dr. Lau's testimony. (*Id.* at *15-*17.)

### *B. Instant Suit*

In July 2019 (about a month after filing his new trial motion in the prior suit), Stremfel filed the instant medical negligence complaint, naming as defendants Dr. Kalantar and Huntington Memorial Hospital (the site of the May 18 emergency procedure). In terms nearly or wholly identical to

9

those in the prior complaint, the instant complaint alleged: (1) on May 10, 2016, Dr. Kalantar performed Stremfel's tonsillectomy at Arcadia Outpatient Surgery Center; (2) on May 18, 2016, Stremfel presented to an emergency facility (specified in the instant complaint as the emergency department of Huntington Memorial Hospital), hemorrhaging from his tonsillectomy site; (3) "Defendants, and each of them, undertook to render surgery and other treatment as were necessary for the proper diagnosis and treatment of Plaintiffs' [*sic*] condition"; (4) "Defendants, and each of them, so negligently and carelessly failed to exercise the proper degree of knowledge in [*sic*] skill in examining, diagnosing, treating, operating, and continued caring for Plaintiff, that Plaintiff's [*sic*] suffered a long period of anoxia and disability which is believed to be permanent"; and (5) as a result of the defendants' negligence, Stremfel suffered general damages in the form of personal injuries, pain and suffering, mental anguish, and emotional distress, as well as special damages in the form of medical expenses and loss of earnings.

The instant complaint differed from the prior complaint in expressly alleging that Dr. Kalantar performed an emergency procedure on May 18, and in describing the procedure with facts, including Dr. Kalantar's delay in performing the tracheostomy, discovered during Dr. Lau's deposition. The complaint alleged Dr. Kalantar and Huntington Memorial Hospital had fraudulently concealed

10

those facts, "constituting equitable estoppel and tolling the statute of limitations."

In October 2019, Dr. Kalantar demurred, arguing Stremfel's instant complaint was barred under the doctrines of claim preclusion and issue preclusion.[2] In opposition, Stremfel argued claim preclusion did not apply because his prior complaint and instant complaint involved different causes of action -- the former concerning only the May 10 tonsillectomy, and the latter concerning the May 18 emergency procedure to correct the post-tonsillectomy hemorrhage. Stremfel also argued the prior judgment had no preclusive effect because Stremfel's appeal from it remained pending.

The trial court (Judge Curtis A. Kin) stayed proceedings on Dr. Kalantar's demurrer pending our resolution of Stremfel's prior appeal. Following issuance of the remittitur, the court set Dr. Kalantar's demurrer for hearing and received additional briefs from the parties. Stremfel renewed his argument that the prior and instant complaints involved different causes of action. Additionally, Stremfel argued that an exception to claim preclusion was

---

[2] "The doctrines of claim preclusion (historically referred to as res judicata) and issue preclusion (historically referred to as collateral estoppel) give certain conclusive effect to a former judgment in subsequent litigation involving the same controversy." (7 Witkin, Cal. Procedure (6th ed. 2022) Judgment, § 361.) Because we find no error in the trial court's application of claim preclusion, we need not address issue preclusion.

11

established by his discovery, after the prior judgment, of the facts to which Dr. Lau had testified, citing authority for the proposition that claim preclusion does not apply where there are "'changed conditions and new facts which were not in existence at the time of the prior judgment, and upon which such judgment was based.'"

After a hearing, the court sustained Dr. Kalantar's demurrer without leave to amend. The court concluded all elements of claim preclusion were satisfied because Dr. Kalantar was a party to both the prior and instant suits, the summary judgment in Dr. Kalantar's favor was a prior judgment on the merits, and the prior and instant complaints involved the same cause of action. Regarding the cause of action, the court elaborated: "Notwithstanding plaintiff's emphasis on different events in the two cases, in both actions, plaintiff's alleged injury stems from the permanent anoxic brain injury resulting from the hemorrhaging at the tonsillectomy site. [Citations.] [¶] Whether that injury resulted from negligence on May 10, 2016 during the tonsillectomy or May 18, 2016 during the post-operative emergency visit (or both), plaintiff has one harm and therefore one cause of action arising from the May 10, 2016 tonsillectomy and related events thereafter." The court rejected Stremfel's reliance on his discovery, after the prior judgment, of the facts to which Dr. Lau had testified, explaining, "[T]he Court of Appeal found that this delayed discovery was due to plaintiff's lack of diligence in deposing [Dr. Lau]. [Citations.] In other words, the facts alleged in

12

the Complaint in the instant action existed before the opposition to Kalantar's summary judgment was due in the prior action.  By failing to depose Dr. Lau, plaintiff did not exercise the required diligence to discover those facts.  Accordingly, there are no 'changed conditions' or 'new facts' upon which to find that res judicata does not apply."  The court entered judgment on the demurrer.  Stremfel timely appealed.

## DISCUSSION

"On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, appellate courts assume the truth of all facts properly pleaded by the plaintiff-appellant and may also consider matters subject to judicial notice . . . ."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2021) Ch. 8-C ¶ 8:136.)  "Appellate courts will examine the complaint's factual allegations to 'determine de novo whether the complaint states facts sufficient to state a cause of action under any possible legal theory.'"  (*Ibid.*)  "Review of the trial court's failure to grant leave to amend is conducted under the abuse of discretion standard."  (*Id.* ¶ 8:136.2.)

Stremfel contends the trial court erred in sustaining Dr. Kalantar's demurrer on the ground of claim preclusion.  "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

Stremfel disputes the satisfaction of the first element, arguing that the prior and instant suits involved different causes of action.  He additionally argues that even if all elements of claim preclusion were satisfied, Dr. Kalantar is estopped from asserting the doctrine due to his fraudulent concealment of facts regarding the May 18 emergency procedure.  In the alternative, Stremfel contends the court abused its discretion in failing to grant him leave to amend his complaint to add certain allegations.  As explained below, we find no error.

### A. Same Cause of Action

"Whether two lawsuits are based on the same cause of action is determined in California by reference to the primary right theory.  [Citation.]  Under this theory, a 'cause of action' is comprised of a primary right possessed by the plaintiff, a corresponding duty imposed upon the defendant, and a wrong done by the defendant which is a breach of such primary right and duty." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.) "[U]nder the primary rights theory, the determinative factor is the harm suffered." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.)

Here, Stremfel's prior and instant suits involved the same primary right and, therefore, the same cause of action.  The two complaints sought compensation for the same harm, viz., Stremfel's anoxic brain injury sustained during his hemorrhage on May 18, 2016 (and related emotional

14

damages, medical expenses, and loss of earnings). "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken v. Philip Morris USA, Inc.*, *supra*, 48 Cal.4th at 798.) These two actions are no exception. As the trial court aptly explained, "Notwithstanding plaintiff's emphasis on different events in the two cases, in both actions, plaintiff's alleged injury stems from the permanent anoxic brain injury resulting from the hemorrhaging at the tonsillectomy site. [Citations.] [¶] Whether that injury resulted from negligence on May 10, 2016 during the tonsillectomy or May 18, 2016 during the post-operative emergency visit (or both), plaintiff has one harm and therefore one cause of action arising from the May 10, 2016 tonsillectomy and related events thereafter." (See *Henry v. Clifford* (1995) 32 Cal.App.4th 315, 319-321 (*Henry*) [first and second medical negligence suits involved same cause of action, where both complaints sought damages for same course of medical treatment, notwithstanding first complaint's additional allegation of patient's postoperative fall from hospital bed]; cf. 1 McDonald, Cal. Medical Malpractice Law & Practice (2022 ed.) § 7:3 [regarding accrual of cause of action for statute-of-limitations purposes, "[t]he general rule prevails that but a single cause of action exists for [medical] malpractice, i.e., that a plaintiff may not

'split' the cause of action to cover separate events associated with the physician's acts or omissions"].)[3]

It is true, as Stremfel emphasizes, that the prior complaint did not expressly mention the May 18 emergency procedure, or Dr. Kalantar's involvement therein. But Dr. Kalantar's potential liability for the procedure was encompassed within the complaint's allegations concerning the defendants' negligent "examining, diagnosing, treating, operating, and continued caring for" Stremfel, which the complaint alleged resulted in Stremfel's anoxic brain injury on May 18. (See *Henry*, *supra*, 32 Cal.App.4th at 320 [rejecting plaintiff's contention that summary judgment on prior complaint adjudicated liability only for patient's postoperative fall from hospital bed, where prior complaint alleged defendant breached duty of care in patient's "diagnosis, care, surgery, and treatment"].) Indeed, Stremfel himself evidently understood his allegations as encompassing potential liability for the May 18 procedure, as shown by his: (1) naming as a defendant Dr. Lau, who was not involved in his care before the May 18 procedure; (2) moving for a new trial in reliance on Dr. Lau's testimony concerning the May 18 procedure; and (3) arguing on his

---

[3]     "Guidance in determining whether the facts present one or more than one cause of action may be found not only in the precedents on res judicata but also in cases in which the statute of limitations was an issue." (Schwing & Carr, 1 Cal. Affirmative Defenses (2d ed. 2021) § 14:16.)

16

prior appeal that this testimony raised triable issues on *all* elements of his claim against Dr. Kalantar, expressly including "duty, breach, and causation of injury."  Although Stremfel now attempts to reverse course in order to evade the preclusive effect of the prior judgment, we conclude he was correct in reading the allegations of his prior complaint to encompass Dr. Kalantar's potential liability for negligence in performing the May 18 procedure.  In sum, notwithstanding the instant complaint's additional emphasis on that procedure, the prior and instant suits involved the same cause of action.

### B. Estoppel Due to Fraudulent Concealment

Stremfel contends that even if all elements of claim preclusion were satisfied, Dr. Kalantar is estopped from asserting the doctrine due to his fraudulent concealment of facts regarding the May 18, 2016 emergency procedure.  We disagree.

### 1. Principles

"The defendant may . . . be estopped to raise preclusion in the second trial by his or her conduct in the first trial, e.g., where the defendant induces his or her adversary to refrain from presenting an issue or objects to its consideration." (7 Witkin, Cal. Procedure (6th ed. 2022) Judgment, § 375, citing *Comer v. Associated Almond Growers of Paso Robles* (1929) 101 Cal.App. 687, 690 (*Comer*).)  This exception to claim preclusion is based on the doctrine of equitable

17

estoppel.  (See *Comer, supra*, at 690.)  Courts have been reluctant to apply equitable exceptions to claim preclusion. (See Schwing & Carr, 1 Cal. Affirmative Defenses, *supra*, § 14:46 ["There is [only] weak authority in California for an exception from the application of res judicata in cases in which its application would impose a manifest injustice"]; cf. *Federated Dept. Stores, Inc. v. Moitie* (1981) 452 U.S. 394, 401 [disapproving lower appellate court's reliance on "'simple justice'" and "'public policy'" in purporting to create exception to claim preclusion, as claim preclusion itself is "a rule of fundamental and substantial justice" that "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case"].) Consistent with this reluctance, "the courts do not find an estoppel lightly."  (Schwing & Carr, 1 Cal. Affirmative Defenses, *supra*, § 14:43.)

Nor do the courts lightly grant equitable relief from a judgment on the ground of an opposing party's fraud.  "If the aggrieved party had a reasonable opportunity to appear and litigate that party's claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his or her counsel, and that the occasional unfortunate results of undiscovered perjury or other intrinsic fraud must be endured in the interest of stability of final judgments.  The rule is explained in *Pico v. Cohn* (1891) 91 C[al]. 129, 134, . . . as follows: ' . . . The trial is [the party's] opportunity for

18

making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. . . . Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.'" (8 Witkin, Cal. Procedure (6th ed. 2022) Attack on Judgment in Trial Court, § 248.) "Many cases apply the rule in denying relief." (*Id.*, § 249.)

We find *Eichman v. Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1176 (*Eichman*) particularly instructive. There, franchisees filed two suits against their franchisor. (*Id.* at 1173.) In the first suit, for breach of the franchise agreement, the parties executed a settlement agreement, on which judgment was entered. (*Ibid.*) In the second suit, the plaintiffs filed a complaint involving the same injury at issue in the first suit, and amended the complaint to allege the defendant had fraudulently concealed the full extent of its wrongs until after the prior judgment was entered. (*Id.* at 1173-1174.) Applying claim preclusion, the trial court sustained a demurrer without leave to amend. (*Id.* at 1174.) On appeal, the plaintiffs contended claim preclusion did not apply because the defendant had fraudulently concealed facts until after the prior judgment was entered. (*Id.* at 1175.) The Court of Appeal concluded this contention was "meritless for two reasons: (1) fraud or perjury by a party, which goes undiscovered until after judgment is entered, does not affect the finality and conclusiveness of the

19

judgment and (2) the information allegedly concealed here would have been discovered had the [plaintiffs] diligently investigated their case." (*Ibid.*) In concluding the plaintiffs had not exercised due diligence, the court relied, inter alia, on their failure in the first suit to serve the defendant with an interrogatory concerning litigation with other franchisees, which would have revealed that other franchisees had filed a complaint presenting the concealed facts. (*Id.* at 1176.) The court concluded the plaintiffs could not evade the preclusive effect of the prior judgment because "ignorance of evidence which should have been discovered does not negate the application of res judicata [citations]." (*Ibid.*)

### 2. *Analysis*

Assuming the truth of Stremfel's allegations that Dr. Kalantar concealed facts regarding the May 18 emergency procedure, we conclude that notwithstanding the concealment, Dr. Kalantar is not estopped from asserting claim preclusion. In the prior suit, Dr. Kalantar neither induced Stremfel to refrain from presenting the issue of negligence in the May 18 procedure, nor objected to consideration of the issue. (See 7 Witkin, Cal. Procedure, *supra*, § 375.) On the contrary, Stremfel did present that issue (as explained above), and Dr. Kalantar consented to its consideration by supporting his summary judgment motion with evidence that he complied with the standard of care during the May 18 procedure. As we concluded in our prior

20

opinion, had Stremfel exercised due diligence in the prior suit by timely deposing Dr. Lau, he would have discovered the concealed facts in time to consider them in deciding whether to oppose Dr. Kalantar's summary judgment motion. (See *Stremfel I*, *supra*, 2020 Cal.App.Unpub. LEXIS 8509, at *13-*17.) Therefore, Stremfel's "ignorance of evidence which should have been discovered does not negate the application of [claim preclusion]," or estop Dr. Kalantar from asserting the doctrine. (*Eichman*, *supra*, 147 Cal.App.3d at 1176; see also 8 Witkin, Cal. Procedure, *supra*, § 248.)

We disagree with Stremfel's contention that "[d]iligence, or the lack thereof, *after the prior lawsuit was filed* is not relevant to res judicata when there has been fraudulent concealment." (Italics added.) Stremfel's interpretation of the law is inconsistent with *Eichman*, which rejected the plaintiffs' reliance on fraudulent concealment because they were not diligent in, inter alia, failing to serve an interrogatory *during* the prior suit. (*Eichman*, *supra*, 147 Cal.App.3d at 1176.) *Eichman* applied well-established limitations on equitable relief for an opposing party's fraud, grounded on expectations that the aggrieved party ordinarily will expose such fraud "during" the litigation in the exercise of due diligence. (*Id.* at 1176; see also 8 Witkin, Cal. Procedure, *supra*, § 248.) Signaling approval of *Eichman*'s application of these limitations, our Supreme Court has cited *Eichman* for the proposition that "under the doctrines of res judicata and collateral estoppel[,]

21

a judgment may not be collaterally attacked on the ground that evidence was falsified or destroyed." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 10, citing *Eichman*, at 1175-1176.)

Stremfel fails to address *Eichman*'s holding on this point, despite Dr. Kalantar's reliance on that holding in his respondent's brief. Instead, Stremfel relies on *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150 (*Allied Fire*).[4]

---

[4] In *Allied Fire*, a subcontractor brought two suits against the general contractor that had hired it to work on a project that was delayed. (*Allied Fire, supra,* 127 Cal.App.4th at 152-153.) In the first suit, brought in federal court for breach of the subcontract, discovery revealed that the general contractor had concealed the full extent of delay damages paid by the client. (*Id.* at 152.) The concealed delay damages were not at issue in the first suit, which ended in judgment for the subcontractor. (*Id.* at 152-153.) In the second, state-court suit, the subcontractor asserted a new fraud claim based on the concealed delay damages. (*Id.* at 153.) The trial court granted the defendant's motion for summary judgment on the ground of claim preclusion, applying federal preclusion law. (*Id.* at 154.)

On appeal, the subcontractor argued the court erred in applying claim preclusion because the fraud claim did not accrue until after the first suit had been filed, when the plaintiff discovered the fraud. (*Allied Fire, supra,* 127 Cal.App.4th at 152, 154-155.) The Court of Appeal agreed, relying on California authority for the propositions that: (1) a fraud claim does not accrue until the plaintiff discovers or is put on inquiry notice of the underlying fraud; and (2) claim preclusion does not apply to claims that "arise" after the prior complaint is filed, or to "new

*(Fn. is continued on the next page.)*

*Allied Fire* is inapposite.  "Nowhere in [*Allied Fire*] does the court mention the primary rights theory.  Although not stated explicitly, it appears the court applied federal rather than California preclusion law."  (*In re Andrews* (Bankr. 9th Cir. June 5, 2014, No. 07-2119) 2014 Bankr.LEXIS 2466, *28; see also 7 Witkin, Cal. Procedure (6th ed. 2022) Judgment, § 440 ["The primary rights doctrine is one area in which California claim preclusion law differs from federal law"].)  To the extent *Allied Fire* applied California authority, it concluded only that claim preclusion did not bar a *new* cause of action that had accrued during the pendency of a prior suit, which involved a different cause of action.  (See *Allied Fire, supra*, 127 Cal.App.4th at 155; *In re Andrews, supra*, 2014 Bankr.LEXIS at *28 [distinguishing *Allied Fire*, where newly discovered forgery did not give rise to new cause of action, instead merely supporting same cause of action involved in prior suit]; cf. *Planning &*

rights acquired pending the action."  (*Id.* at 155.)  Citing only federal authority, the court indicated that claim preclusion should bar even a newly arisen claim "if with diligence it could have been brought earlier," but that "where it cannot be said that plaintiff knew or should have known of the claim *when the first action was filed*, res judicata should not bar the second action."  (*Id.* at 156, italics added, citing *Himel v. Continental Ill. Nat. Bank & Trust* (7th Cir. 1979) 596 F.2d 205, 210; see also *Allied Fire*, at 155 [determination whether cause of action was or could have been litigated in prior action is made "as of the date the first complaint is filed" (citing *Los Angeles Branch NAACP v. L.A. Unified Sch. Dist.* (9th Cir.1984) 750 F.2d 731, 739)].)

*Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227-228 [citing *Allied Fire* as authority for exception to claim preclusion for claims that "'arise after the initial complaint is filed'"].)  Here, as explained above, Stremfel's instant suit asserts the same negligence cause of action involved in the prior suit.  Stremfel's belated discovery of the facts to which Dr. Lau testified merely provided support for that cause of action, which had been resolved in Dr. Kalantar's favor by the unopposed summary judgment.  Again, we conclude the judgment retains its preclusive effect despite Stremfel's "ignorance of evidence which should have been discovered" at the time he declined to oppose it.  (*Eichman*, *supra*, 147 Cal.App.3d at 1176; see also 8 Witkin, Cal. Procedure, *supra*, § 248.)

Even assuming, as we must, the truth of Stremfel's allegations that Dr. Kalantar concealed facts related to the May 18 emergency procedure, we are mindful that claim preclusion "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." (*Federated Dept. Stores, Inc. v. Moitie*, *supra*, 452 U.S. at 401.)  "'Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.'" (8 Witkin, Cal. Procedure, *supra*, § 248.)  Nearly five years have passed since Stremfel began litigating his cause of action, and three years have passed since he could have relied on the purportedly concealed facts in opposition to Dr. Kalantar's motion for summary judgment, had he exercised due

24

diligence.  Having failed to do so, and likewise having failed in his bid to overturn the prior judgment on his motion for new trial and subsequent appeal, he cannot relitigate his cause of action.  (See *ibid.*)  The trial court properly sustained Dr. Kalantar's demurrer to the instant complaint.

### C. Leave to Amend

Stremfel contends that even if we conclude the trial court properly sustained the demurrer to the instant complaint as pleaded, the court abused its discretion in failing to grant him leave to amend.  Stremfel asserts the complaint could be amended to add allegations concerning: (1) Stremfel's response to a contention interrogatory served by Dr. Kalantar in the prior suit, which did not expressly state any contention of negligence in the May 18 emergency procedure; (2) additional details about Dr. Kalantar's and Huntington Memorial Hospital's concealment of facts concerning the May 18 procedure, including how Dr. Kalantar's misrepresentations and omissions delayed Stremfel's discovery of facts to which Dr. Lau testified; and (3) additional details about Stremfel's factual investigation preceding his filing of the prior suit.

Stremfel does not argue the addition of any of these allegations would enable the complaint to overcome another demurrer based on claim preclusion.  He therefore fails to meet his burden to establish an abuse of the trial court's discretion.  (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) Ch. 7(I)-A

¶ 7:130 ["It is not up to the judge to figure out how the complaint can be amended to state a cause of action. Rather, the burden is on plaintiff to show *in what manner* plaintiff can amend the complaint, and *how* that amendment will change the legal effect of the pleading"].)

## DISPOSITION

The judgment is affirmed.  Dr. Kalantar is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:


COLLINS, J.


CURREY, J.

27